THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FREDDIE L. HOLMES, Defendant-Appellant.

First District (1st Division) No. 79-593

Opinion filed September 2, 1980.

James J. Doherty, Public Defender, of Chicago (Zaven Peter Tokatlian and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Freddie Holmes, a/k/a John Brown, was charged with rape, deviate sexual assault and attempt armed robbery. (Ill. Rev. Stat. 1977, ch. 38, pars. 11—1, 11—3, 8—4 and 18—2.) After a bench trial, defendant was found guilty on all charges and subsequently sentenced to 21 years' imprisonment.

The victim testified that on April 1, 1978, at about 10 p.m., she attended a dance at the Woodlawn Organization where she served food. She left alone after 11 p.m. and started walking home to get a strobe light for the dance. When she heard footsteps behind her, she quickened her pace. A man approached her, pointed a gun at her neck and led her into a nearby doorway.

In court, she identified defendant as the man who accosted her. She also testified that she had seen him at the dance. Defendant ordered her to hand over her money. When the victim began to cry, defendant struck her in the face. He then took her to a nearby alley and, at gunpoint, placed his penis in her mouth. He then forcibly had vaginal intercourse with her.

Later, in another alley, defendant again forcibly had oral intercourse with the victim.

Defendant told the victim that he intended to take her to an abandoned building. She suggested that they go to her home instead. She later testified that she was afraid and didn't want to go to an abandoned building. Defendant agreed to accompany her home and instructed her to go inside the apartment to see if her children were sleeping and then open the back door and let him inside. When the victim entered her apartment, she locked the door and telephoned the police. The police arrived soon thereafter. Complainant identified defendant as her assailant at a police lineup the night of the incident.

On the second day of trial (after the victim had concluded testifying), the State sought leave to amend its answer to defendant's discovery motion to include three letters defendant had written and mailed to the victim while in Cook County jail. The Assistant State's Attorney stated that he first became aware of these letters after the trial commenced. Defense counsel expressed surprise and the court allowed him about four hours to discuss the new evidence with defendant. When court reconvened, the trial judge denied the State's motion to amend its discovery answer, thereby barring use of the evidence during the State's case in chief. Defense counsel moved for a mistrial asserting that, had he known of these surprising letters, he would not have advised defendant to waive his right to a jury trial. The court denied this motion.

The State continued its case in chief with testimony by investigating police officers. Two Chicago Police Department squad cars arrived at the victim's home shortly after she called the police. Officer Michael Szymonik observed defendant in the hallway and arrested him. Szymonik searched defendant and found no weapons but did find some marijuana in defendant's pocket. Officer Thaddeus Macudzinski recovered a small caliber handgun from the floor of the hallway while Szymonik was searching defendant. Macudzinski then interviewed the victim and noticed she had a bruised face and swollen eyes. He took the victim to Billings Hospital.

Dr. Jeffrey Korn testified that he treated the victim at Billings Hospital on the night of the incident. He observed swelling on the left side of her face and performed a pelvic examination during which he took vaginal swabs. Dr. Korn examined a set of swabs and found no evidence of sperm. He sent another set of swabs to the Chicago Police Department. Rodney Black, a microanalyst for the Chicago Police Department Crime Lab, examined a specimen obtained from Dr. Korn and found human sperm present.

Defendant testified on his own behalf that on April 1, 1978, at about 11:30 p.m., he was at the Woodlawn Organization dance selling marijuana. Defendant contacted complainant and offered to sell her marijuana. She

agreed and defendant accompanied her home so she could get money to pay for the marijuana. When they arrived at complainant's home, she pulled a knife on defendant and tried to take his marijuana. He struck her with his hand. She ran inside her apartment and locked the door. Defendant then sat outside on the landing and rolled some marijuana. Shortly thereafter the police arrived and arrested him. Defendant denied possessing a gun or trying to rob complainant and denied forcing complainant to submit to sexual acts.

On cross-examination, defendant testified that he did not know complainant before he met her at the dance. Over defense objection, defendant testified that he had called complainant twice from Cook County jail urging her not to appear in court. Over defense counsel's continuing objection, defendant admitted that he had written letters to complainant from jail asking her not to testify against him. Three of these letters were admitted into evidence. Defendant's motion for a mistrial was denied.

On appeal, defendant asserts that he should have been granted a mistrial because defense counsel would not have advised him to waive a jury trial had he known about the inculpatory letters. Counsel believed the evidence would be closely balanced and, because the case hinged on the credibility of complainant and defendant, opted for a bench trial.

In the most inculpatory letter, defendant wrote:

> "You said you wouldn't lie for me. * * * But you could help me out if you came to court and said that you made a mistake and that the guy that did it is on the streets and that you seen him."

Defendant relies upon *People v. Norris* (1978), 62 Ill. App. 3d 228, 379 N.E.2d 80. There, defendant waived his right to a jury trial because of his counsel's belief that the evidence was largely circumstantial and, in his view, impeachable. During the trial, however, the court allowed the State to amend its answer to discovery to include two occurrence witnesses who were allowed to testify during the State's case in chief. One witness testified to seeing defendant pull a gun and the other stated that he saw defendant shoot the deceased. Defendant was convicted of voluntary manslaughter.

On appeal, defendant argued that in view of the ultimate importance of the occurrence witnesses' testimony, his jury waiver was not knowingly and intelligently made and that a mistrial should have been granted. In reversing, the appellate court stated that:

> "Under the peculiar factual situation presented here, we cannot say that defendant's waiver of a jury trial was knowingly and intelligently made. The fact remains that at the time defendant waived his right to a jury trial, he was unaware of the most damaging evidence against him. The trial court should have granted defendant's motion for a mistrial." 62 Ill. App. 3d 228, 233, 379 N.E.2d 80, 84.

*Norris* is distinguishable, however, because in the instant case the State was not permitted to amend its discovery answer and could not use the letters during its case in chief. The letters were admitted solely for impeachment. The *Norris* court limited its holding to the "peculiar factual situation presented" and we cannot say that impeachment use of the letters had the same damaging effect as did the occurrence witness testimony in *Norris*.

In *Norris*, defendant's theory of the case was directly affected by the new evidence. This certainly would have influenced his jury waiver decision. In the instant case, although defense counsel was initially surprised by the letters, he was afforded ample opportunity to rectify their contents with his theory of the case. Indeed, the letters were not damaging to the defense theory of the case, only to defendant's credibility. Thus, although the letters may have influenced whether or not defendant would testify, we find they were of small import to his jury waiver decision.

To summarize, defendant asserts that had counsel known that the State possessed damaging evidence that changed a balanced case into a case strongly against defendant, he would not have advised his client to waive his right to a jury trial. Our review of the record convinces us that (1) the letters were not substantively "damaging" as envisioned by the *Norris* court but merely affected defendant's credibility; and (2) the evidence was strongly against defendant irrespective of the letters.

Accordingly, defendant has failed to demonstrate any prejudice which is necessary to invalidate his knowing and intelligent jury waiver. (See *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) For this reason the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.