THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRENT L. CHAPPLE, Defendant-Appellant.

Fourth District    No. 4—95—0816

Argued February 19, 1997.—Opinion filed August 14, 1997.

Elliott T. Price (argued), of Chicago, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and James Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In January 1995, defendant Trent Chapple was charged with unlawful possession of more than 15 but less than 100 grams of a substance containing cocaine with the intent to deliver, a Class X felony (720 ILCS 570/401(a)(2)(A) (West 1994)), and the included offense of unlawful possession of a controlled substance, a Class 1 felony (720 ILCS 570/402(a) (West 1994)). Defendant was represented by private counsel and pleaded not guilty. At a pretrial hearing in May 1995, after being fully admonished by the court, defendant waived his right to a jury trial. 725 ILCS 5/103—6 (West 1994). In July 1995, however, defendant filed a motion to withdraw his jury waiver. Following argument by counsel, the trial court denied defendant's motion. The court conducted a bench trial in August 1995 and found defendant guilty of both offenses. In September 1995, the trial court vacated the judgment on possession and sentenced defendant to 15 years in prison on the conviction of possession with the intent to deliver. Defendant appeals, asserting (1) the trial court abused its discretion in denying his motion to withdraw jury waiver; (2) he was not proved guilty beyond a reasonable doubt of possession of cocaine with intent to deliver; (3) he was denied effective assistance of counsel; and (4) the trial court abused its discretion in sentencing by failing to consider the relative seriousness of the offense. We affirm.

## I. WITHDRAWAL OF JURY WAIVER

■ Defendant contends the trial court abused its discretion in denying his motion to withdraw the jury waiver. Withdrawal of a jury waiver is not a matter of right. *People v. Closson*, 13 Ill. App. 3d 878, 880, 301 N.E.2d 347, 348 (1973). Rather, whether a jury waiver, once knowingly and intelligently made, may be withdrawn is a matter within the discretion of the trial court, unless the circumstances indicate the defendant was unaware of the consequences of the waiver. *People v. Hall*, 114 Ill. 2d 376, 414, 499 N.E.2d 1335, 1351 (1986).

■ Defendant's motion stated "the reason for the waiver of jury trial was to avoid undue prosecution of [defendant's] wife and that is no longer possible." In his brief, defendant represents he negotiated a plea agreement through his attorney whereby, in return for defendant's jury waiver and a plea of guilty, the State would not prosecute his wife in an unrelated matter. At the motion hearing,

defense counsel indicated prosecution of defendant's wife was no longer feasible and, due to this changed circumstance, defendant wished to reinstate his right to a jury trial.

In denying defendant's motion, the court noted when defendant waived his right to a jury trial it was knowing and voluntary, the alleged plea agreement was not mentioned and defendant gave no indication the waiver was conditional. Nothing in the record suggests defendant was unaware of the consequences of his jury waiver and he does not argue as much.

A change in circumstances can sometimes entitle a defendant to withdraw a jury waiver. The circumstances here did not require such a result. In *People v. Smith*, 11 Ill. App. 3d 423, 296 N.E.2d 628 (1973), the third district held the trial court committed reversible error in denying the defendant's motion to withdraw his jury waiver where the State was permitted to amend the charging instrument after the waiver. There, defense counsel apparently believed the original charge was technically deficient and the case would involve a purely legal question. The appellate court found the situation should have caused the trial court to question whether, in view of the amendment, the defendant's jury waiver was understandingly made. The appellate court concluded the waiver may not have been intended to be made with respect to the charge as amended, but solely to the charge as originally filed. *Smith*, 11 Ill. App. 3d at 425, 296 N.E.2d at 630.

In *People v. Holmes*, 88 Ill. App. 3d 140, 410 N.E.2d 381 (1980), the defendant sought to withdraw his jury waiver when the State was allowed to amend its answer to his discovery motion to include newly discovered evidence, damaging to the defendant's case, after the bench trial had already begun. The defendant argued he would not have waived a jury trial had he known the evidence would be admitted at trial. Finding the new evidence was not "substantively 'damaging' " but only impeaching, however, the first district concluded the defendant failed to demonstrate the prejudice necessary to invalidate his knowing and intelligent jury waiver. *Holmes*, 88 Ill. App. 3d at 143, 410 N.E.2d at 384; but see *People v. Norris*, 62 Ill. App. 3d 228, 379 N.E.2d 80 (1978) (admission of damaging, newly discovered substantive evidence resulted in mistrial). Unlike these cases, defendant's ability to defend himself against the charges here was not impaired by the changed circumstance, *i.e.*, the State's inability to prosecute his wife in a separate matter.

The present situation is analogous to a case where a defendant wishes to withdraw a guilty plea. A defendant has no absolute right to withdraw a plea of guilty and bears the burden of demonstrating

to the trial court the necessity of withdrawing the plea. *People v. Artale*, 244 Ill. App. 3d 469, 475, 612 N.E.2d 910, 915 (1993); see *People v. Davis*, 145 Ill. 2d 240, 244, 582 N.E.2d 714, 716 (1991). When it appears a plea of guilty was entered on the misapprehension of fact or law, or as a consequence of misrepresentations by counsel, the State's Attorney, or someone else in authority, the court should permit the withdrawal of a guilty plea. *Artale*, 244 Ill. App. 3d at 475, 612 N.E.2d at 915; see also *People v. Staple*, 233 Ill. App. 3d 8, 10, 598 N.E.2d 384, 386 (1992).

Here, defendant does not allege he was under a misapprehension of fact or law when he made his jury waiver. He does not allege the State's Attorney made any misrepresentations to him or breached the proposed plea agreement. Nor does he allege his jury waiver was involuntarily made. Defendant's only contention at the motion hearing was his incentive for waiving a jury trial no longer existed and, therefore, he wished to withdraw the waiver. Under these circumstances, we conclude the trial court did not abuse its discretion in denying defendant's motion to withdraw his jury waiver.

## II. SUFFICIENCY OF THE EVIDENCE

■ Next, defendant argues his conviction was erroneous because, even viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt of possession of cocaine with the intent to deliver. See *People v. Lewis*, 165 Ill. 2d 305, 336, 651 N.E.2d 72, 87 (1995). To convict on a charge of possession of a controlled substance with the intent to deliver, the State must prove (1) the defendant had knowledge of the presence of a controlled substance, (2) the controlled substance was in his immediate control or possession, and (3) he intended to deliver the controlled substance. *People v. Robinson*, 167 Ill. 2d 397, 407, 657 N.E.2d 1020, 1026 (1995); *People v. Newman*, 211 Ill. App. 3d 1087, 1093, 569 N.E.2d 1089, 1092-93 (1991).

At defendant's trial, six law enforcement officers testified as follows. On January 6, 1995, approximately eight officers executed a search warrant, obtained after a controlled purchase of narcotics was made at the home of Dhrumba Smith, for Smith's residence. While the officers were inside the residence conducting the search, defendant knocked on the front door. A uniformed officer opened the door and asked defendant to step in. Upon seeing the officers, defendant exclaimed "[o]h shit!" and turned to leave. Officer David McLearin said "[s]top! We want to talk to you." When defendant attempted to leave, McLearin grabbed him by the arm, but defendant spun out of his coat and ran. Three to four officers began chasing defendant.

Upon exiting the residence, officers observed an unoccupied car with its motor running parked directly in front of the residence. The officers later discovered this was the car defendant had driven to the scene.

As they chased defendant, McLearin and deputy sheriff Craig Gessford observed defendant throw something up in the air. McLearin shouted to the other officers "[h]e threw something," terminated his pursuit of defendant, and went to the area where he saw the object thrown. McLearin retrieved a plastic bag containing what appeared to be four to six rocks of crack cocaine. McLearin testified the rocks were much larger than the typical rocks of crack cocaine sold as individual doses. McLearin stated individual doses weigh approximately 0.1 grams. He estimated *each rock recovered* from defendant weighed approximately 6 grams.

The pursuit of defendant ended when he ran into a residence several blocks away where police apprehended him. Occupants of the residence testified they did not know defendant and he ran into the house uninvited. The officers who apprehended defendant brought him back to Smith's residence, patted him down and recovered over $500 from his pants pocket.

McLearin testified he turned over the bag defendant had thrown away to Inspector John Szajko. Szajko estimated there were approximately 28 grams of a substance resembling crack cocaine loose in the plastic bag McLearin gave him. Szajko performed a field analysis of the substance in the bag and it tested positive for the presence of cocaine. Szajko testified he then placed the plastic bag and its contents into an evidence bag, which he sealed and, later the same day, locked in the task force evidence vault.

Jerry Wagoner, a Decatur police officer, testified he removed the evidence bag from the task force evidence vault on January 10, 1995, and delivered it to the Illinois State Police laboratory for testing. Michael Cravens, a forensic scientist with the Illinois State Police Bureau of Forensic Science, testified Wagoner delivered the evidence bag to him on January 10, 1995. Cravens testified the evidence he received consisted of an outer plastic bag with 11 smaller plastic packets inside, each containing a white chunky material. Cravens stated he separated the substance contained in each packet from its packaging and tested portions of the substance taken from each packet. These substances tested positive for the presence of cocaine. Cravens testified the total weight of the substances recovered was 26.5 grams. When he finished his tests, Cravens placed the rocks of cocaine back into the plastic bag loose, along with the 11 empty packets. At trial, McLearin, Szajko, Wagoner and Cravens identified

State's exhibit No. 1 as the evidence McLearin recovered from defendant on January 6, 1995.

Defendant testified on his own behalf. He denied possessing cocaine on the date in question and alleged he ran from the officers because he was unaware they were police and was frightened by their presence in his friend's house.

At the conclusion of the trial, the court found defendant guilty. The court stated it considered defendant's flight from the officers, the amount of money on his person at the time of his arrest, and the size, amount, and packaging of the cocaine rocks found in his possession as indications of his intent to deliver the controlled substance. Defendant contends the evidence was insufficient to prove he possessed cocaine with the intent to deliver. Specifically, he argues (1) his flight was not evidence of an intent to deliver, (2) he provided the court with an explanation of why he had a large amount of money on him at the time of his arrest, and (3) the physical evidence presented was unreliable and the amount and packaging of the substance allegedly recovered on January 6, 1995, were not indicative of an intent to deliver.

■ Because direct evidence of intent to deliver is rare, it must usually be proved by circumstantial evidence. *Robinson*, 167 Ill. 2d at 408, 657 N.E.2d at 1026. Illinois courts consider several factors probative. In *Robinson*, the supreme court noted the quantity of a controlled substance *alone* can be sufficient evidence to prove an intent to deliver beyond a reasonable doubt. *Robinson*, 167 Ill. 2d at 410-11, 657 N.E.2d at 1028. A reasonable inference of intent to deliver arises where the amount of narcotics possessed is too large to be viewed as being for personal use. *Robinson*, 167 Ill. 2d at 408, 657 N.E.2d at 1026; *People v. Beverly*, 278 Ill. App. 3d 794, 799, 663 N.E.2d 1061, 1065 (1996); *People v. Thomas*, 261 Ill. App. 3d 366, 369, 633 N.E.2d 839, 841 (1994). At defendant's trial, there was expert testimony indicating the amount of cocaine was more than would reasonably be used for personal consumption.

Officer Edward Root of the Decatur police department, qualified before the court as an expert in the area of narcotics trafficking and sales, testified in his opinion the amount of drugs recovered from defendant could not reasonably be considered to have been for personal use. Root explained the typical weight of an individual dose of crack cocaine is approximately 0.2 grams. He stated such a rock of cocaine would be the size of a pea or kernel of corn and noted the several rocks recovered here were much larger. Based on Root's testimony, 26 grams would be the equivalent of 130 individual doses of crack cocaine. McLearin testified in his experience an individual dose of

crack cocaine weighs approximately 0.1 grams. Thus, the court could reasonably have concluded the amount of the substance represented between 130 and 260 individual doses of crack cocaine.

Root would infer defendant intended to deliver the drugs based solely on the quantity in his possession. Root explained drug *users*, as opposed to *dealers*, do not typically hold large amounts of drugs because of their high cost and the greater potential penalties associated with possession of large quantities. In Root's experience, having questioned hundreds of drug users and dealers, he had never interviewed *anyone* who possessed the amount of cocaine found on defendant for personal use.

On cross-examination Root stated such an amount of cocaine could *possibly* be for personal use. On redirect he opined that probability was very small. We acknowledge when the amount of a seized substance *may* be considered consistent with personal use, additional evidence of intent to deliver is required. *Robinson*, 167 Ill. 2d at 411, 657 N.E.2d at 1028. Such additional evidence was present here.

Defendant encountered the officers in a house known by police to be a site for drug trafficking. Shortly before defendant arrived at the Smith residence, the police apprehended and arrested another person who left the residence and possessed what appeared to be crack cocaine. Police also arrested a person inside the residence who was in possession of drug-dealing paraphernalia and a substance resembling crack cocaine.

Further, defendant's own actions support the court's finding of an intent to deliver. When defendant got out of his car and approached Smith's residence, he left the motor of his car running. This suggests defendant likely intended to quickly pick up or drop off something or someone. Upon seeing uniformed officers inside Smith's house, he exclaimed "[o]h shit" and ran so hurriedly he ran out of his jacket and one shoe. This permits the inference of a consciousness of guilt.

Other factors supportive of an inference of intent to deliver are the manner in which the drugs are packaged and the possession of a large amount of cash. See *Robinson*, 167 Ill. 2d at 408, 657 N.E.2d at 1028; *People v. Jones*, 215 Ill. App. 3d 652, 655-56, 575 N.E.2d 561, 563 (1991). Here, defendant had a significant amount of money at the time of his arrest. Although defendant testified the money was for the purchase of remodeling supplies, the trial court was in the best position to assess the plausibility of defendant's explanation and was entitled to disbelieve it. *People v. Young*, 269 Ill. App. 3d 120, 123, 645 N.E.2d 533, 535 (1994). The court specifically stated it did not believe defendant and remarked upon his "incredible" testimony.

Officer Root stated it was his opinion, based on the amount of drugs recovered, the amount of money found in defendant's possession, and defendant's arrival at a house known for drug trafficking, the drugs found in defendant's possession were intended for delivery. To affirm defendant's conviction based on these factors is consistent with *Robinson*, *Beverly*, and numerous other appellate decisions. See, e.g., *People v. Nixon*, 278 Ill. App. 3d 453, 663 N.E.2d 66 (1996); *People v. Greenleaf*, 254 Ill. App. 3d 585, 627 N.E.2d 111 (1993); *People v. Berry*, 198 Ill. App. 3d 24, 555 N.E.2d 434 (1990).

■ Defendant contends in finding the intent to deliver, the trial court relied heavily on the manner in which the drugs were packaged. Yet, he argues, inconsistencies between McLearin's and Cravens' descriptions of the substance and the way it was packaged created a reasonable doubt of his intent to deliver. Defendant implies McLearin's description of the amount and packaging of the substance recovered does not demonstrate an intent to deliver, whereas Cravens' description might. Defendant also argues the inconsistent descriptions suggest possible tampering with the substance by police.

At trial, McLearin stated he recovered approximately four to six rocks of what appeared to be crack cocaine, packaged loosely in an untied plastic bag. As stated, McLearin estimated each rock weighed approximately 6 grams, indicating a total weight of 24 to 36 grams. When McLearin was shown the State's exhibit purported to be the substance recovered from defendant on January 6, 1995, he stated it appeared to be the same type of material defendant threw, with the same type of packaging, but observed the substance was "mashed up now in a lot more small pieces." McLearin testified he himself did not package the exhibit into evidence but handed it over to Szajko. When asked to describe in more detail the packet he recovered and its contents, McLearin stated "I didn't really examine [it] that much." Cravens described the evidence he examined as a plastic bag containing 11 smaller plastic packets of crack cocaine. He stated the cocaine rocks, exclusive of their packaging, weighed 26.5 grams in total. McLearin, Szajko, and Wagoner each testified neither they nor anyone else altered or tampered with the suspected narcotics while the evidence was in their custody or control.

We note McLearin's estimate of the total weight of the substance recovered, given before he was shown State's exhibit No. 1, was very close to the actual weight of the substance, as determined by Cravens in the laboratory. The disagreement in testimony was as to the number of rocks in the plastic bag and whether they were wrapped individually.

While the trial court may have considered the packaging of the

cocaine an important factor, in light of the other evidence presented, it is not as critical a factor as defendant suggests. Despite some inconsistencies in the descriptions of the packaging, the quantity of the substance alone, as to which the witnesses were in substantial agreement, was a significant factor evidencing the intent to deliver.

In *People v. Munoz*, 103 Ill. App. 3d 1080, 1082, 432 N.E.2d 370, 372 (1982), the appellate court affirmed the defendant's conviction for possession with the intent to deliver cocaine, acknowledging the only evidence of the intent to deliver was the amount of drugs recovered (250.1 grams cocaine). Although the amount of cocaine recovered here was substantially less than in *Munoz*, Root's testimony showed it was an amount far greater than could *reasonably* be considered consistent with personal use, regardless of its packaging. Also, the court could have found McLearin's disclaimer, stating he did not really examine the contents of the bag when he recovered it, sufficient to explain the inconsistencies in the witnesses' testimony. Finally, the court could have found the well-documented chain of custody and the witnesses' in-court identifications of the evidence persuasive as to the reliability of the evidence.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory it creates a reasonable doubt as to the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985); *Beverly*, 278 Ill. App. 3d at 798, 663 N.E.2d at 1064. Given the totality of the evidence presented, a rational trier of fact could have concluded, beyond a reasonable doubt, defendant possessed and intended to deliver approximately 26 grams of a substance containing cocaine on the date of his arrest.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends he was denied the effective assistance of trial counsel, guaranteed by the federal and state constitutions, setting forth three arguments in support of this contention. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8.

■ The Supreme Court of Illinois in *People v. Albanese*, 125 Ill. 2d 100, 531 N.E.2d 17 (1988), adopted the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), for determining whether a criminal defendant was denied effective assistance of counsel under the state and federal constitutions. To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's representation fell below an objective standard of reasonableness, making the trial results unreliable, and (2) he was prejudiced by counsel's unprofessional conduct, *i.e.*, he must show but for the attorney's unprofessional errors, the

results of the trial would have been different. *Albanese*, 125 Ill. 2d at 106, 531 N.E.2d at 19. To establish prejudice due to counsel's unprofessional representation, a defendant bears the burden of proving "the factfinder would have had a reasonable doubt respecting guilt" if not for counsel's errors. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69. When the evidence is not closely balanced and the evidence of the defendant's guilt is overwhelming, the court may find there is no reasonable probability the outcome of the trial or of a new trial would have been different had trial counsel pursued the course suggested by the defendant in his appeal. See *People v. Chatman*, 276 Ill. App. 3d 619, 622-23, 659 N.E.2d 44, 46 (1995).

■ First, defendant claims his trial counsel's failure to request a substitution of judge following the court's denial of his motion to withdraw the jury waiver denied him the opportunity to have a fair and impartial trial. A defendant has the burden of showing prejudice on the part of the judge in order to disqualify the judge from sitting in a case. *People v. Wright*, 234 Ill. App. 3d 880, 897, 601 N.E.2d 817, 830 (1992). Absent a showing of animosity, ill will, or distrust toward a defendant, a judge will not be disqualified for cause. *People v. Walsh*, 273 Ill. App. 3d 453, 456-57, 652 N.E.2d 1102, 1105 (1995); see also *People v. Damnitz*, 269 Ill. App. 3d 51, 55, 645 N.E.2d 465, 468-69 (1994).

Defendant contends the trial judge was initially led to anticipate defendant would enter a guilty plea and implies the judge became biased against him when he did not do so. This bias, defendant contends, precluded him from receiving an impartial trial and was a circumstance his trial counsel should have protected him from by filing a motion for substitution of judge.

There is no support in the record for defendant's bare assertion the trial judge "would be clearly biased against him in view of the fact that a guilty plea seemed imminent but was aborted at the last minute." The trial court denied defendant's motion to withdraw his jury waiver based on its previous finding the waiver was knowing and voluntary. The trial judge did not participate in or learn the details of any plea negotiations between defendant and the State and there was no discussion of the plea terms until the hearing on defendant's motion to withdraw his jury waiver. In *People v. Fitzgerald*, 55 Ill. App. 3d 626, 632, 370 N.E.2d 1207, 1212 (1977), the court indicated a judge who has heard an accused withdraw a previous offer to plead guilty is not required to recuse himself in the bench trial of the accused where the judge did not participate in plea discussions and did not concur in the terms of the plea agreement supposedly reached.

Defendant has presented no evidence indicating the trial judge was biased against him. Therefore, we cannot conclude defendant would have succeeded on a pretrial motion for substitution of judge if one had been filed. See *Fitzgerald*, 55 Ill. App. 3d at 632, 370 N.E.2d at 1212; *People v. Harris*, 220 Ill. App. 3d 848, 858-59, 580 N.E.2d 1342, 1349 (1991). Moreover, defendant has not established the outcome of the trial would have been different had a new judge been assigned the case. We find defendant's claim of ineffective assistance of counsel, based on his attorney's failure to file a motion for substitution of judge, to be without merit.

■ Next, defendant claims his trial counsel's failure to highlight in closing argument contradictions in the testimony of the State's witnesses denied him the effective assistance of counsel. Defendant argues the inconsistent descriptions given by the State's witnesses of the drugs he allegedly possessed, discussed above, suggested there had been tampering with the evidence by police or police incompetence in handling the evidence, and these possibilities should have been highlighted in closing argument by defense counsel. Defendant suggests his trial counsel's failure to point out the inconsistencies fell below an objective standard of reasonableness because a critical factor in the prosecution of possession with the intent to deliver is the type of packaging and quantity of the substance involved. He asserts the trial court relied heavily on Cravens' testimony regarding the packaging of the cocaine and argues but for his trial counsel's failure to emphasize the inconsistent descriptions of this evidence, the result of the trial would have been different.

In examining counsel's performance, a reviewing court shall not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *People v. Gonzalez*, 238 Ill. App. 3d 303, 331-32, 606 N.E.2d 304, 324 (1992). Defense counsel repeatedly asked McLearin whether he or other officers attempted to preserve any fingerprint evidence on the plastic bag recovered. In this way, counsel brought to the court's attention the possibility the physical evidence presented was never actually in defendant's possession. Defense counsel asked the witnesses numerous, specific questions regarding the packaging and amount of the substance recovered. The court heard any discrepancies in witness testimony and was in a position to draw reasonable inferences from any conflicts in the evidence. Defendant was not denied the effective assistance of counsel merely because he disagrees with the trial tactics employed by his attorney.

■ Finally, defendant alleges trial counsel's failure to file a motion for a new trial denied him effective assistance of counsel. To suc-

ceed on this claim, defendant must establish there was a reasonable probability a new trial would have been granted had counsel filed such a motion. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see *Chatman*, 276 Ill. App. 3d at 622, 659 N.E.2d at 46. Defendant contends he would have prevailed on such a motion if it (1) attacked the denial of his motion to withdraw the jury waiver and (2) argued the evidence was insufficient to prove him guilty beyond a reasonable doubt. Based on our resolution of those issues, we disagree.

When there are no substantial grounds for a new trial, a failure to move for one does not demonstrate incompetency. *Gonzalez*, 238 Ill. App. 3d at 331, 606 N.E.2d at 323; *People v. Purnell*, 126 Ill. App. 3d 608, 624, 467 N.E.2d 1160, 1172 (1984). Nothing in the record suggests a defense motion for a new trial would have been successful. Accordingly, defendant has not met the second prong of *Strickland* and we reject this last claim of ineffective assistance of counsel.

## IV. SENTENCE IMPOSED

■ Finally, defendant argues the 15-year sentence imposed by the court was excessive in light of the seriousness of the offense committed. Absent an abuse of discretion, the sentence imposed by the trial court may not be altered upon review. *People v. Perruquet*, 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883 (1977). The court found defendant possessed 26.1 grams of a substance containing cocaine with the intent to deliver it. The possession of between 15 and 100 grams of cocaine with the intent to deliver is punishable by a term of imprisonment "not less than 6 years and not more than 30 years." 720 ILCS 570/401(a)(2)(A) (West 1994).

Defendant argues the 26.1 grams he allegedly possessed was only " 'slightly in excess of the minimum required to make the offense a Class X felony,' " quoting *People v. Evans*, 143 Ill. App. 3d 236, 242, 492 N.E.2d 1036, 1041 (1986), and concludes his sentence was excessive. Defendant requests reduction in his sentence pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) or, alternatively, remand for resentencing.

While the amount of the controlled substance possessed by a defendant is relevant to the seriousness of the offense, this was not the only factor considered by the trial court in sentencing defendant. The court indicated it considered the following factors: defendant's substantial traffic record, his prior convictions for possession of cannabis, his "incredible" testimony at trial, his "total lack of sincerity," and his "continued protestations of innocence." The court concluded defendant was "not a good risk of rehabilitation" and sentenced him to 15 years in prison, a period well within the statutory guidelines.

Sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections (Code) set forth factors to which the court may accord weight in determining an appropriate sentence. 730 ILCS 5/5—5—3.1, 5—5—3.2 (West 1994). The court may opt to minimize a sentence when the character and attitude of the defendant indicate he is unlikely to commit another crime. 730 ILCS 5/5—5—3.1(a)(9) (West 1994). The sentencing court may choose not to minimize a sentence when, as the court found here, there is a distinct absence of mitigating factors. 730 ILCS 5/5—8—1(b) (West 1994). Here, the court gave weight to defendant's history of criminal activity, including prior convictions for possession of cannabis, which is a proper basis for imposing a more severe sentence under section 5—8—1(b) of the Code. 730 ILCS 5/5—5—3.2(a)(3) (West 1994). Defendant presented no evidence in mitigation of his crime. Given the relevant aggravating and lack of mitigating factors before it, we conclude the trial court did not abuse its discretion in sentencing defendant to 15 years in prison.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.