NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230047-U

NO. 4-23-0047

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| JAMES B. TALIDIS, | ) | No. 18CF372 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted the motion of the Office of the State Appellate Defender to withdraw as defendant's appellate counsel and affirmed the summary dismissal of defendant's postconviction petition at the first stage.

¶ 2    Defendant, James B. Talidis, appeals the trial court's first-stage dismissal of his *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)). This court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. OSAD filed a motion to withdraw as counsel, opining defendant's appeal presents no arguably meritorious issue for review. We grant OSAD's motion and affirm the trial court's dismissal of defendant's postconviction petition.

¶ 3                                  I. BACKGROUND

¶ 4    On November 1, 2018, a grand jury returned an indictment charging defendant with driving while his license was revoked, a Class 2 felony. 625 ILCS 5/6-303(a), (d-5) (West 2018).

The indictment alleged that, on September 27, 2018, defendant drove a motor vehicle on a highway in Illinois while his driving privileges were revoked and while he had 15 prior "violations" for driving while his license was revoked.

¶ 5        At defendant's initial court appearance on November 9, 2018, the trial court warned defendant that if he failed to "show up to court," "there could be a trial in your absence." The court explained that, by failing to appear, defendant would waive his rights to confront and cross-examine the State's witnesses, and if found guilty, he could be sentenced in his absence. The court asked if defendant understood, and defendant responded, "I do."

¶ 6        Defendant's trial was initially set for May 20, 2019. During a pretrial hearing on April 8, 2019, the trial court again warned defendant that "if you don't show up on May 20th, the trial might go on in your absence, in which case you'd be waiving your rights to confront and cross-examine all the State's witnesses, and if found guilty, you could even be sentenced in your absence." Defendant responded, "I understand."

¶ 7        On the morning of May 20, 2019, defendant's counsel failed to appear for trial. The prosecutor informed the trial court that she spoke with defense counsel by telephone, who told her he was traveling to the courthouse and would arrive in the afternoon. Defendant interjected that he had "fired [his] attorney" and believed that his counsel "prepared motions to withdraw." When counsel arrived that afternoon, the court noted, "We're set for trial," but defendant objected, stating that he had "terminated" his attorney and hired a new one. Defendant claimed his new attorney "was unable to make it today." The State indicated that it received no appearance from another attorney. The court stated that the parties would move forward with trial, but defendant repeatedly refused to proceed either *pro se* or while represented by his current counsel. As a result, the court revoked defendant's bail, held him in contempt, and ordered him "held without bail on the

contempt issue." The court then allowed defendant's counsel to withdraw and continued the trial for defendant to obtain new counsel.

¶ 8    On May 31, 2019, defendant appeared in court without an attorney. The trial court appointed the public defender to represent defendant. Defendant's new counsel filed a motion to dismiss the bill of indictment, asserting that it failed to state an offense since it alleged only that defendant had 15 prior "violations"—not "convictions"—for driving while his license was revoked. See 625 ILCS 5/603(d-5) (West 2018) (noting that any person "convicted of a fifteenth or subsequent violation of this Section is guilty of a Class 2 felony"). Counsel also filed motions to set bail and to reconsider the finding of direct criminal contempt.

¶ 9    At a hearing on June 7, 2019, the trial court set defendant's bail at $750,000. The court warned defendant once more that if he posted bail and failed to appear for trial, the trial would "go on in [his] absence." The State moved to amend the bill of indictment to refer to defendant's "convictions," rather than "violations," for driving while his license was revoked, and the court continued the matter to allow defendant's counsel to review the grand jury transcript.

¶ 10    Thereafter, defendant paid $75,000 to secure his release. At the next pretrial hearing, on June 21, 2019, the trial court denied defendant's motion to reconsider the finding of direct criminal contempt. Additionally, the court found that defendant was not indigent, and the public defender moved to withdraw. The court allowed the public defender to withdraw after defendant acknowledged that he planned to hire a private attorney. The court set defendant's trial for August 26, 2019, and informed defendant of the trial date.

¶ 11    Defendant's new counsel entered his appearance on July 12, 2019. On August 16, 2019, defendant's counsel requested a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012) (providing that a trial judge may participate in plea discussions between the

State and defendant's counsel and offer a recommendation for an appropriate sentence that the parties may accept or reject). Following the conference, defendant rejected the trial court's recommended sentence, and the court informed defendant that the matter would proceed to trial. Defendant's counsel informed the court that defendant wanted "additional time" to prepare for trial, but the court denied the request and stated, "Trial starts Monday morning." The court warned defendant once more that if he did not appear for trial, (1) the trial would proceed in his absence, (2) defendant would waive his rights to confront and cross-examine witnesses, and (3) if convicted, defendant would be sentenced in his absence.

¶ 12        On August 23, 2019, defendant filed a *pro se* "Notice of Rogatory Appointment." Therein, defendant asserted that he "cannot 'appear' in a court of the United States" and purported to appoint the trial judge as "fiduciary trustee" to "settle all accounts of this case, on my behalf."

¶ 13        On the morning of the trial, August 26, 2019, defendant was not present. The trial court acknowledged that defendant filed a "Notice of Rogatory Appointment *** indicating that he was not likely to show up today." Defendant's counsel informed the court that he did not adopt the *pro se* notice. Thereafter, defendant's jury trial commenced.

¶ 14        The State called Illinois State Police Trooper Adam McKay as a witness. McKay testified to the following. On September 27, 2018, McKay was patrolling I-90 in Boone County when he observed a vehicle traveling approximately 15 miles per hour below the posted speed limit of 70 miles per hour. McKay acknowledged that traveling below the speed limit was not illegal. However, he observed that the sticker on the vehicle's license plate had the wrong color and learned that the vehicle's registration was expired when he checked it. McKay testified that he pulled the vehicle over. Upon approaching the vehicle, McKay observed defendant inside it. According to McKay, defendant identified himself by name but told McKay he had no

identification because he had a revoked driver's license. McKay directed defendant to his squad car and ran defendant's information. Upon doing so, McKay confirmed that defendant's license was revoked. The State introduced a video of the stop captured by McKay's squad car camera. The State also introduced defendant's driving abstract, which showed numerous prior convictions for driving while his license was suspended or revoked.

¶ 15 Defendant presented no witnesses. The jury found defendant guilty of driving while his license was revoked.

¶ 16 On October 11, 2019, the trial court held a sentencing hearing. Defendant was not present. Defendant's counsel informed the court that he sent defendant a certified letter but that it had been returned, stating that defendant had moved. Additionally, defendant did not respond to counsel's e-mails and phone calls. A presentence investigation report indicated that defendant had 15 prior convictions for driving while his license was suspended or revoked. The State recommended a sentence of 10 years' imprisonment. Defendant's counsel recommended a term of three years' imprisonment. The court indicated that it considered the statutory factors in aggravation and mitigation and imposed a sentence of 12 years' imprisonment. Defendant filed no motion for a new trial.

¶ 17 Defendant was subsequently taken into custody and remanded to serve his sentence in the Illinois Department of Corrections.

¶ 18 On October 11, 2022, defendant filed a *pro se* postconviction petition. Defendant alleged that his constitutional rights were violated as follows:

"U.S. Federal Constit. Amendments #1, #4, #5, #6, #8 and #14 cl. 1. In addition to these aforesaid U.S. Constitutional provisions, I also claim the following violations to my ILLINOIS STATE CONSTITUTIONAL provisions in Article 1, sections #1,

#2 Due Process and Equal Protection, #5 Right to Petition, #6 Search and Seizures, #7 Indictment and Prelim. Hearings, #8 Rights after Indictment, #9 Bail & *Habeas Corpus*, #11 Limitation of Penalties after a conviction, #12 Right to Remedy and Justice, #13 Trials by Jury, #14 Imprisonment for Debt, #16 *Ex post facto* Laws, #20, 23, & 24. SEE AFFIDAVIT IN SUPPORT."

¶ 19 Defendant attached an affidavit to the postconviction petition and alleged the following:

"Trial was held *Ex-parte*, in where I the Defendant, was unable to attend, due to being hospitalized, due to a fractured leg, which was fractured on Aug 26th, 2019, during a rainstorm, on the morning of this Trial date. I was taken to St. Anthony Hospital, in Rockford, IL., where the Emergency Room determined that my leg was in fact so fractured, due from a serious fall, off of a trailer I was loading, just hours before this Trial.

In addition to this, I declare here and now, that my counsel was in-effective in several methods, and he was fired before Trial, due to his failures to file any pretrial motions on my behalf, and his failure to seek a continuance due for the necessary substitution of Judge Tobin for cause & prejudice, and failure to make challenges to the charging instrument, and the bias of this counties [*sic*] State's Attorneys Office against me for the last 17 years prior to this Trial. My Due Process was also violated."

¶ 20 On October 17, 2022, the trial court summarily dismissed defendant's postconviction petition. The court explained that the allegations in the petition were "legal conclusions with no factual allegations or documents to support the claims." Specifically, the court

noted that defendant failed to assert any facts or provide any supporting documentation to establish that he had a valid reason for failing to attend the trial. Additionally, defendant did not establish why he failed to advise his attorney of his absence or to seek a new trial. The court likewise concluded that defendant's ineffective assistance claims included no allegations as to what specific actions he believed his counsel should have undertaken and why those actions would have likely been successful. Accordingly, the court concluded that defendant failed to state a " 'gist' " of a constitutional violation and summarily dismissed defendant's petition.

¶ 21 On November 28, 2022, defendant filed a *pro se* motion to reconsider the dismissal of his postconviction petition, alleging that he was unable to properly prepare his postconviction petition because he did not have access to transcripts, the common law record, or discovery materials. Defendant also filed a motion to file supplemental verification documents.

¶ 22 On December 13, 2022, the trial court denied the foregoing motions, concluding that defendant failed to assert "any newly discovered evidence" bringing to the court's attention "any misapplication of the law."

¶ 23 Defendant appealed, and on January 12, 2023, OSAD was appointed as defendant's appellate counsel.

¶ 24 II. ANALYSIS

¶ 25 OSAD moves to withdraw as counsel. In its motion, OSAD states that it has read the record on appeal and has found no issue of arguable merit. OSAD states that it has mailed defendant a copy of its motion and advised him that he may respond to it and raise any issues he deems reviewable in this court. OSAD's motion is supported with a memorandum of law providing a statement of facts, potential issues, and arguments why those issues lack arguable merit. Defendant filed no response to OSAD's motion.

¶ 26    In its motion, OSAD contends no meritorious argument can be made that the trial court erred in summarily dismissing defendant's postconviction petition at the first stage.

¶ 27    The Act provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions. *People v. Morris*, 236 Ill. 2d 345, 354 (2010). A postconviction proceeding is a collateral attack on a prior conviction that is limited to constitutional issues that were not and could not have been previously adjudicated. *Morris*, 236 Ill. 2d at 354. To seek relief under the Act, a postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). "The failure to comply with section 122-2 is fatal and by itself justifies the petition's summary dismissal." *People v. Harris*, 224 Ill. 2d 115, 126 (2007).

¶ 28    At the first stage of a postconviction proceeding, the trial court must independently determine, within 90 days of the filing of a petition, whether the petition is frivolous or patently without merit. *Morris*, 236 Ill. 2d at 354. A petition is frivolous or patently without merit " 'only if the petition has no arguable basis either in law or in fact.' " *Morris*, 236 Ill. 2d at 354 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). A petition has no arguable basis in law when it is grounded in an indisputably meritless legal theory, which includes legal theories contradicted by the record. *Morris*, 236 Ill. 2d at 354. A petition has no arguable basis in fact when it is premised on a fanciful factual allegation, which includes allegations that are fantastic, delusional, or belied by the record. *Morris*, 236 Ill. 2d at 354. Additionally, a petition that alleges nonfactual and nonspecific assertions amounting to mere conclusions is subject to summary dismissal. *Morris*, 236 Ill. 2d at 354. At the first stage, a defendant must merely state the gist of a constitutional claim, which requires the presentation of only a limited amount of detail. *People v. Williams*, 364 Ill.

App. 3d 1017, 1022 (2006). We review *de novo* the first-stage dismissal of a postconviction petition. *Morris*, 236 Ill. 2d at 354.

¶ 29    OSAD first argues that defendant cannot assert that the trial court failed to comply with the procedures set forth in the Act by summarily dismissing his postconviction petition at the first stage. The Act provides, "[w]ithin 90 days after the filing and docketing of each [postconviction] petition, the court shall examine such petition and enter an order thereon," and if "the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order." 725 ILCS 5/122-2.1(a)(2) (West 2020). Because the court, at this stage, must independently determine whether the petition is frivolous or patently without merit, it must do so without input from the State. *People v. Jones*, 2017 IL App (4th) 140594, ¶ 28.

¶ 30    Here, defendant filed his *pro se* postconviction petition on October 11, 2022. The trial court, without input from the State, summarily dismissed the petition on October 17, 2022. Thus, because the petition was dismissed within 90 days of its filing in accordance with the first-stage procedures of the Act, we agree that defendant can raise no issue of arguable merit relating to the procedure undertaken by the court in disposing of defendant's petition.

¶ 31    Turning to the substance of defendant's petition, OSAD contends that the petition does not set forth the gist of any constitutional claim. Initially, OSAD notes that defendant failed to include any facts to support his claims or allege any specific events during the proceedings that violated his constitutional rights, and therefore, defendant's allegations are too broad and conclusory to raise a constitutional claim. OSAD continues that, by construing defendant's petition liberally, it might be interpreted to include claims that (1) defendant's due process right was violated when he was tried *in absentia*; (2) defendant's counsel was ineffective for (a) failing to file pretrial motions, (b) failing to seek a continuance for the trial, (c) failing to file a motion to

substitute the trial judge for cause, and (d) failing to challenge the prosecutor's office for being biased; and (3) defendant's due process rights were violated. OSAD asserts that, even assuming these claims were properly raised, none of them would survive the first stage.

¶ 32        OSAD first argues that defendant can raise no meritorious argument that his due process rights were violated when he was tried *in absentia*. A defendant has a constitutional right to be present at all stages of the trial and to confront all of the witnesses against him. *People v. Smith*, 188 Ill. 2d 335, 340 (1999) (citing U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8). Even so, it is also the defendant's duty to be present, especially where he has been released on bail. *Smith*, 188 Ill. 2d at 340. A defendant waives the right to be present when he voluntarily absents himself from trial. *Smith*, 188 Ill. 2d at 341. A trial court's decision to proceed with a trial *in absentia* will only be reversed if it constitutes an abuse of discretion. *Smith*, 188 Ill. 2d at 341. "A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable; when no reasonable person would take the view adopted by the trial court; or when its ruling rests on an error of law." *People v. Johnson*, 2018 IL App (2d) 160674, ¶ 10.

¶ 33        Section 115-4.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4.1 (West 2018)) provides:

> "When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant."

To establish a *prima facie* case of willful absence, it must be shown that the defendant (1) was advised of his trial date, (2) was advised that the failure to appear might result in his being tried *in absentia*, and (3) did not appear for trial. *Johnson*, 2018 IL App (2d) 160674, ¶ 12.

¶ 34　　　　In this case, the record establishes that defendant was present for his initial court appearance on November 9, 2018, and was informed that he could be tried in his absence if he did not appear. Defendant indicated that he understood this. Thereafter, the trial court reminded defendant at several subsequent hearings that the trial could proceed in his absence if he did not appear. The record also establishes that on June 21, 2019, the court informed defendant that his trial would occur on August 26, 2019. Even so, prior to trial, defendant filed a *pro se* motion entitled "Notice of Rogatory Appointment" in which he stated that he "cannot 'appear' in a court of the United States" and "appoint[ed]" the trial judge to be his "fiduciary" and "settle all accounts of this case, on [defendant's] behalf." On the morning of trial, defendant failed to appear. The court interpreted defendant's Notice of Rogatory Appointment as an "indicat[ion] that [defendant] was not likely to show up" for trial. As the record establishes that defendant failed to appear for trial despite having been informed of the trial date and the possibility that he could be tried *in absentia*, there was a *prima facie* case that defendant's absence was willful. Thus, because the statutory requirements under section 115-4.1 of the Code were satisfied, we agree with OSAD that defendant can raise no claim that his due process rights were violated when he was tried and sentenced in his absence.

¶ 35　　　　OSAD next contends that defendant can raise no meritorious argument that his counsel was ineffective. To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice. *People v. McGath*, 2017 IL App (4th) 150608, ¶ 37.

A defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms. *McGath*, 2017 IL App (4th) 150608, ¶ 37. To show prejudice, a defendant must show that, but for counsel's errors, the result of the proceeding would have been different. *McGath*, 2017 IL App (4th) 150608, ¶ 37. Failure to satisfy either prong precludes a finding of ineffective assistance. *McGath*, 2017 IL App (4th) 150608, ¶ 37. At the first stage of postconviction proceedings, a petition alleging ineffective assistance must show that (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17.

¶ 36        OSAD first asserts that defendant failed to raise any arguable claim that the attorneys who represented him were ineffective for failing to file any pretrial motions. We note that defendant's petition failed to specify what pretrial motions he wanted his counsel to file. As a result, this claim amounts to nothing more than a mere conclusion subject to summary dismissal. *Morris*, 236 Ill. 2d at 354; see *People v. Delton*, 227 Ill. 2d 247, 258 (2008) (holding defendant's claim of ineffective assistance of counsel, which alleged only that his attorney failed to investigate all possible witnesses, amounted to a "broad conclusory allegation of ineffective assistance of counsel"). Moreover, the record rebuts defendant's claim that his counsel failed to file pretrial motions. Upon being appointed, the public defender filed a motion to dismiss the bill of indictment, to set bail, and to reconsider the finding of direct criminal contempt. Because defendant's claim that his attorneys failed to file pretrial motions was "positively rebutted by the record," it was not sufficient to survive the first stage of the proceedings. *People v. Palmer*, 2017 IL App (4th) 150020, ¶ 23. Accordingly, we agree that the petition raised no meritorious argument that his counsel was ineffective for failing to file pretrial motions.

¶ 37       Next, OSAD argues that defendant failed to raise an arguable claim that counsel was ineffective for failing to seek a continuance for his trial because defendant cannot establish that he suffered prejudice. The record shows that, on May 20, 2019, defendant refused to proceed with trial because he wanted an opportunity to hire different counsel. Although the trial court announced that defendant's trial would proceed that day, defendant insisted that he would not move forward with trial. The court continued the proceedings only after holding defendant in contempt for his continued refusal to proceed with trial. Thereafter, following defendant's rejection of the court's recommended sentence after the Rule 402 conference, the court denied defendant's request for additional time to prepare for trial, stating that "Trial starts Monday morning." Accordingly, despite defendant's failure to appear for trial on August 26, 2019, the court proceeded with trial. We agree with OSAD that the court made clear its intention not to grant additional continuances, even in defendant's absence, and therefore, any attempt by counsel to obtain a continuance would have been fruitless. Additionally, defendant provided no explanation as to how the result of the proceeding would have been different had counsel sought and been granted a continuance. See *People v. Steele*, 2014 IL App (1st) 121452, ¶ 42 (rejecting the defendant's claim that counsel was ineffective for failing to request a continuance where defendant failed to show that the result of the proceeding would have been different had counsel asked for one). Thus, we agree that defendant can raise no meritorious argument that his counsel was ineffective for failing to request a continuance.

¶ 38       OSAD further argues that defendant cannot claim that counsel was ineffective for failing to file a motion to substitute the trial judge for cause. A defendant may move at any time for the substitution of a judge for cause, supported by affidavit. 725 ILCS 5/114-5(d) (West 2018). However, a defendant's right to the substitution of a judge for cause is not absolute. *People v.*

*Wright*, 234 Ill. App. 3d 880, 897 (1992). A defendant bears the burden of substantiating prejudice on the part of the judge that disqualifies him or her from sitting as the judge in the case. *Wright*, 234 Ill. App. 3d at 897. Absent any showing of animosity, ill will, or distrust toward a defendant, a judge will not be disqualified for cause. *People v. Chapple*, 291 Ill. App. 3d 574, 585 (1997).

¶ 39    Here, defendant alleged nothing in his petition to suggest that the trial court judge harbored any animosity, ill will, or distrust toward defendant. Because this claim failed to allege specific factual assertions, it was conclusory and subject to summary dismissal. *Morris*, 236 Ill. 2d at 354. Additionally, because the petition lacked any facts explaining how the trial judge was prejudiced, defendant cannot establish that the filing of a motion for the substitution of the judge for cause by defendant's counsel was warranted. Accordingly, the petition failed to show that counsel acted unreasonably by opting not to file such a motion. As such, we agree with OSAD that defendant can raise no meritorious argument that his counsel was ineffective for failing to file a motion to substitute the trial judge for cause.

¶ 40    As to defendant's final ineffective assistance claim, OSAD asserts that defendant can raise no meritorious argument that his counsel was ineffective for failing to challenge the State's Attorney's Office for being biased against him "for the last 17 years." Again, this claim is conclusory, as it is not supported by any facts or specific assertions establishing how the state's attorney's office was biased against defendant. Thus, this claim was subject to summary dismissal. *Morris*, 236 Ill. 2d at 354. Additionally, absent such facts, defendant's petition fails to show how or why counsel acted unreasonably in failing to "challenge" the state's attorney's office. Therefore, we agree with OSAD that defendant can raise no meritorious claim that defendant's counsel was ineffective for failing to assert that the state's attorney's office was biased against defendant.

¶ 41        Finally, OSAD argues that defendant's last claim, which states in its entirety, "My Due Process was also violated," was insufficient to raise an arguable claim of a due process violation. As previously noted, a defendant's postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). Since petitions at the first stage of postconviction proceedings are typically drafted by defendants with little legal knowledge or training, the threshold for survival is low. *Hodges*, 234 Ill. 2d at 9. However, this "does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional violation." *Hodges*, 234 Ill. 2d at 10. A petition must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. *Hodges*, 234 Ill. 2d at 10.

¶ 42        Here, defendant neither specified what occurrence resulted in the deprivation of his right to due process nor included any facts to support his claim that this right was violated. Thus, this allegation constitutes nothing more than a mere conclusion that is unsupported by evidence, and therefore, it was subject to summary dismissal. *Morris*, 236 Ill. 2d at 354.

¶ 43        In sum, we agree with OSAD that defendant's petition failed to raise any issue of arguable merit. Because defendant's petition contained no clearly articulated claim of error and no supporting factual allegations, he cannot meet the low threshold for surviving the first stage of postconviction proceedings. Accordingly, defendant's petition was frivolous and patently without merit, and the summary dismissal of his petition was warranted.

¶ 44                            III. CONCLUSION

¶ 45        For the reasons stated, we grant OSAD's motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 46        Affirmed.