THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD C. NORRIS, Defendant-Appellant.

First District (2nd Division)    No. 77-1025

Opinion filed July 5, 1978.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Michael R. Sherwin, Lee T. Hettinger, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

After a trial by the court, defendant was convicted of the voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2) of Wilie Oden and sentenced to a term of three to 15 years. He brings this appeal from his conviction, contending: (1) that the trial court erred in denying his motion for a mistrial made when the State presented the testimony of an alleged eyewitness to the crime whose name was added to the State's list of witnesses after defendant had waived a jury trial, and (2) that he was not convicted of voluntary manslaughter beyond a reasonable doubt.

Because of the nature of our disposition of this appeal, we will discuss only those facts immediately relevant to our decision.

On the evening of November 4, 1974, police officers responding to a radio report of shots fired at Kitty's Lounge on West Madison Street in Chicago, found Wilie Oden slumped over a bar, a pistol in his right hand. He had been shot twice. Oden was taken to a hospital where he died later that evening. Defendant was arrested and charged with murder. Ill. Rev. Stat. 1973, ch. 38, par. 9—1.

Prior to trial defendant filed a discovery motion in which he requested, among other things, a list of the names and addresses of persons the prosecution may or may not call as witnesses. The State answered, listing four names, plus various hospital, coroner's office, and police department personnel. When trial of the case commenced on January 24, 1977, defendant executed a waiver of his right to a jury trial. The court accepted the waiver and proceeded to hear opening statements. After the opening statements, court was adjourned for the day.

When the case was called the next day, the State moved to add five additional names to its list of witnesses, including those of "Darrel Twin, address unknown, and an individual named Benny, address unknown." Counsel for defendant advised the court that he was previously unaware that the State would seek to amend its list of witnesses. The court inquired if any of these additional witnesses was an occurrence witness. The prosecutor responded that he had not personally spoken with any of them. Counsel for defendant then stated: "My objection is on the record certainly, we have already given opening statements to who may or may not be occurrence witnesses." The court then allowed the amendment,

and proceeded to hear the testimony of decedent's widow, the investigating police office, the arresting police officer, and Inez Smith, the owner and operator of Kitty's Lounge.

Smith testified that as she tended bar between 8:30 and 8:45 p.m. on November 4, 1974, she looked through the front window and saw a man outside. The man, whom she now recognized as decedent, waved his hand and turned toward her; then a shot rang out; and decedent "flenched." She then saw two men struggling. On cross-examination, she admitted that she did not know the identities of the two men until "Twin" told her. She also admitted that she had told police investigators the next day that she had not seen any shooting.

The State next called Bennie Campbell, the individual referred to on the State's supplemental list of witnesses as "Benny, address unknown." Defense counsel objected to any testimony by Campbell on the grounds that he had had only a brief opportunity to interview Campbell, and no opportunity to investigate his story. The court offered defense counsel a continuance to investigate Campbell's testimony, but counsel declined, apparently satisfied to state his objection for the record.

Campbell then testified that at the time of the shooting, he was sitting at the bar with Bessie Brown and decedent. Defendant walked up to them and spoke briefly with decedent. Decedent then got up and walked out of the tavern. Defendant pulled a gun from his right pocket and followed decedent outside. Campbell then heard three shots. Decedent came back into the tavern and slumped down over Bessie Brown's shoulder.

The State's next witness was Darrell "Twin" Henderson. Defense counsel also objected to Henderson's testimony on the same bases he had objected to that of Bennie Campbell. This time counsel moved for a mistrial, raising the additional argument that it was unfair to bind defendant to his jury waiver because at the time it was executed, he was unaware that Campbell and Henderson would testify, and unaware of the substance of their testimony. Counsel stated that he had advised defendant to waive a jury on the belief, fostered by the State's original list of witnesses, that the key State witness would be Inez Smith, whose testimony was largely circumstantial and, in counsel's view, impeachable. The court denied the motion on the grounds that once a trial had begun, a jury waiver could not be withdrawn, but continued the case for two weeks to allow counsel to investigate Henderson's story.

When the trial reconvened, Henderson testified that he saw defendant shoot decedent. Henderson maintained that he was sitting "in the window" of Kitty's Lounge, so that he could see out the front window. Prior to the shooting, Henderson heard part of the conversation between defendant and decedent. The two men then exited the tavern. From his vantage point, Henderson could see them standing about four feet apart

on the sidewalk outside. Decedent said, "Forget that gun." Henderson then observed that defendant was holding a gun. When decedent turned to go back into the tavern, defendant fired the pistol, striking him in the right side. Decedent turned and grabbed defendant, and the two men then struggled out of Henderson's view. Shortly thereafter, Henderson heard two more shots.

Defendant testified that decedent, who was intoxicated, had become angered when he refused to buy him a drink. Defendant maintained that decedent suggested they go outside because the music in the tavern was too loud for them to talk, and that when they got outside, decedent pulled out a gun and became abusive. He accused defendant of thinking he was better than his old friends who still lived on the west side. Defendant tried to turn away, but decedent shot him in the stomach. He then grabbed decedent's hand and a struggle ensued, during which the gun again fired. He could not tell where those shots went. Decedent then escaped his grasp and went back into the tavern, still holding the gun. Defendant went to the nearby apartment of his girl friend where he was eventually arrested.

Following defendant's testimony, the defense rested its case. The court found that defendant had fired the first shot; that he had shot decedent because of an intense passion aroused by their argument; and that defendant had acted under an unreasonable belief that his actions were justified. The court found defendant guilty of voluntary manslaughter, a lesser-included offense of murder.

## I.

Defendant argues that in view of the ultimate importance of the testimony of Bennie Campbell and Darrell Henderson to the State's case, his waiver of a jury trial was not knowingly and intelligently executed, and that it was therefore error for the court to deny his motion for a mistrial made prior to Henderson's testimony. The State maintains that defendant's waiver was knowingly and intelligently made; that amendment of the list of witnesses was proper because the names of those witnesses were not known and could not have been obtained by the exercise of due diligence prior the trial; that the decision to allow such unnamed witnesses to testify is within the discretion of the trial court; that defendant was neither surprised nor prejudiced by the testimony because his counsel declined the court's offer of a continuance to prepare to meet the evidence; and that if defendant's motion for a mistrial were granted, the State could never be allowed to amend its list of witnesses once a trial had commenced.

The instant case presents an unusual situation. Defense counsel advised defendant to waive a jury based on the alleged belief that there were no

eyewitnesses to the shooting and that all of the evidence against defendant was circumstantial. The State did not move to amend its list of witnesses until after defendant had waived a jury and opening statements had been heard by the court. At the time of the amendment, neither the defense attorney, nor even the assistant State's attorney, was aware of the substance of any testimony the five witnesses might give. Defense counsel should have moved for a mistrial on the jury waiver issue when he became aware of the substance of Bennie Campbell's testimony. In any event, it is clear that the full impact of the amendment of the list of witnesses was not known until defense counsel interviewed Henderson. There can be no question that the additional evidence surprised and prejudiced defendant. A case in which one witness testified to seeing defendant pull a gun and another testifies he saw defendant shoot the deceased is a far different case from one based on the circumstantial testimony of a witness who told the police a day after the occurrence that she had not seen it.

An analogous situation arose in *People v. Smith* (3d Dist. 1973), 11 Ill. App. 3d 423, 296 N.E.2d 628. There, the defendant was originally charged with "driving while under the influence of liquor." Defense counsel, of the opinion that the charge was fatally defective for its failure to include the word "intoxicating," advised his client to waive a jury trial. On the day of the trial, but prior to the hearing of any evidence, the State moved to amend its charge to include the word "intoxicating." Defense counsel objected, but the court allowed the amendment. Defendant then sought to withdraw his jury waiver, but the trial court refused his request. The appellate court reversed, stating that although the general rule is that withdrawal of a jury waiver is a matter for the discretion of the trial judge, the peculiar set of facts should have raised the question as to whether the waiver of a jury, in view of the amendment of the charge, was understandingly made by the defendant. The court also stated that the circumstance that defense counsel may have been wrong in his conclusion that the charge was fatally defective should not in itself bar a defendant from a timely assertion of a request for a trial by jury.

■■■ There is one distinction between *Smith* and the case at bar, but that relates only to the remedy available to the defendant and not to the underlying rights to be redressed. Smith attempted to withdraw his jury waiver before any evidence was heard, whereas defendant in the case at bar did not assert his desire for a jury trial until the trial was well under way. The authorities are uniform to the effect that a motion for the withdrawal of a jury waiver after the commencement of the trial is not timely and should not be allowed. (*People v. Catalano* (1963), 29 Ill. 2d 197, 203, 193 N.E.2d 797, *cert. denied* (1964), 377 U.S. 904, 12 L. Ed. 2d 176, 84 S. Ct. 1164.) Since withdrawal of the jury waiver was unavailable

to defendant, counsel properly moved for a mistrial. Under the peculiar factual situation presented here, we cannot say that defendant's waiver of a jury trial was knowingly and intelligently made. The fact remains that at the time defendant waived his right to a jury trial, he was unaware of the most damaging evidence against him. The trial court should have granted defendant's motion for a mistrial.

## II.

Because we have concluded that defendant's conviction should be reversed on the grounds outlined in part I of this opinion, there is no need to address defendant's contention that he was not convicted of voluntary manslaughter beyond a reasonable doubt.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

PERLIN and BROWN, JJ., concur.