THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM CORN, Defendant-Appellant.

Fifth District   No. 5—04—0351

Opinion filed June 22, 2005.

Daniel M. Kirwan and Paige Clark Strawn, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Wayne Morris, State's Attorney, of McLeansboro (Norbert J. Goetten, Stephen E. Norris, and Trent M. Marshall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

William Ronald Corn (Corn) was asked if he had anything to say on his own behalf before his punishment was pronounced. He stated that he had made "a big mistake." Indeed, the enormity of his decision to assist James Davis (Davis) in Davis's plot to purloin a vast quantity of anhydrous ammonia from a southern Illinois fertilizer plant was a choice that condemns him to a prison sentence of at least 15 years. The error in judgment will unquestionably harm others whom he will leave behind—an aging mother and three young children—all of whom depended upon him for financial support.

Pleading for the bare minimum 15-year prison term that the offense of unlawful criminal drug conspiracy carries, Corn made a final plea for leniency. He asserted, "I deserve a second chance for once in my life." He currently serves a 25-year prison term, the punishment imposed for his role in this drug conspiracy.

We now grant William Corn his second chance in life. We vacate the 25-year prison term and remand for further proceedings consistent with this opinion.

Corn agreed with Davis, his coconspirator, to steal a large quantity of anhydrous ammonia from the Wayne County FS plant, for use in the manufacture of methamphetamine. In furtherance of the conspiracy, Davis and Corn traveled from their homes in Missouri to Hamilton County, Illinois, where they filled various containers with

anhydrous ammonia, by tapping a fertilizer nurse tank and siphoning off the substance. The amount of anhydrous ammonia siphoned off was enough to create as much as five kilograms of methamphetamine.

Davis and Corn were caught in the act. When police officers arrested Corn, they asked him whether he was armed. He acknowledged that he was and informed the officers that he had two firearms under the front seat of the vehicle. The guns were loaded with ammunition.

The coconspirators were charged with multiple offenses. This appeal deals only with the sentences meted out to Davis and Corn for conspiring to manufacture a very large amount of methamphetamine.

Davis received a 30-year prison term for the unlawful criminal drug conspiracy. Corn's sentence was only five years less. One of the questions raised on appeal is whether a 25-year term of imprisonment is a fair and just punishment, in light of the 30-year sentence meted out to Davis, a far more culpable conspirator who indisputably played a leadership role in this crime. Davis also carried a significant history of criminality into the courtroom on the day that he received his sentence. In contrast, Corn was a novice, with no criminal history to aggravate his crime or to heighten the amount of punishment that he deserved.

We will comment upon the fairness argument later in this decision. We focus first upon another question that controls the outcome of the case. The sentence imposed exceeds the 15-year mandatory minimum prison term in large part because Judge Vaughan considered a factor implicit in Corn's criminal conduct as aggravation of that conduct. A factor implicit in an offense should never be used to aggravate punishment for that offense. See *People v. Conover*, 84 Ill. 2d 400, 404-05, 419 N.E.2d 906, 908-09 (1981).

The punishment imposed in this case was determined by a judge who was justifiably concerned about the amount of methamphetamine that the stolen anhydrous ammonia was capable of producing. Judge Vaughan was dismayed over the serious societal damage that this conspiracy's goal, a large quantity of methamphetamine, would create. The Hamilton County prosecutor argued for more punishment because of the conspiracy's potential threat to the public at large, and Judge Vaughan accepted his position. In pronouncing punishment, he declared that the amount of methamphetamine that the anhydrous ammonia could produce, and its resultant "harm to the community in general," was a serious threat that aggravated the defendant's criminal conduct.

The potential quantity of the drug, and the danger to society that such a quantity could entail, was what our legislators had in mind when they authorized a range of punishment for this offense that

began at a mandatory minimum of 15 years in prison. Because the potential societal danger from large amounts of methamphetamine constitutes a factor inherent in the crime for which the defendant faced punishment, it could not be used to aggravate his conduct and thereby heighten the punishment he might otherwise have received within the statutory range of penalties. See *People v. Maxwell*, 167 Ill. App. 3d 849, 852, 522 N.E.2d 288, 291 (1988) (because the question of widespread harm from the use of cocaine is implicit in the crime of unlawful delivery of a controlled substance, it is reasonable to conclude that the legislature weighed this implicit element of harm from the offense when it classified the crime as a Class 1 felony, and thus, the sentencing judge could not properly consider that harm as an aggravating factor in fixing punishment).

The State concedes that under our decision in *Maxwell*, Judge Vaughan should not have considered the potential threat to society that could stem from the manufacture of five kilograms of methamphetamine. However, it maintains that Judge Vaughan placed more emphasis upon the potential harm to workers at the FS plant from Davis's tampering with the valves on the anhydrous ammonia tanks and the potential for harm to the arresting officers as a result of the defendant's possession of two loaded handguns. The State argues that the 25-year sentence can be supported by those aggravating factors, even if widespread societal harm from the quantity of methamphetamine that this conspiracy might have produced was considered in aggravation of the sentence.

We cannot say what weight Judge Vaughan necessarily assigned to those things that he considered in aggravation of Corn's conduct. However, given the facts that he confronted, we would like to think that the *potential* for harm to people who work with the fertilizer tanks and the *potential* for harm to the arresting police officers were not assigned significant weight. There was absolutely no evidence that Davis's use of the valves left them in any condition other than as he found them. There was nothing to suggest that the tank's hoses or valves were left in a manner that created some increased hazard or increased risk of harm. The potential for harm to FS workers was sheer speculation over what might have happened but, apparently, did not.

Having two loaded handguns concealed inside the vehicle was certainly a fact that aggravated Corn's conduct. Notwithstanding, whatever *possible* harm that existed from the two loaded guns in the car has to be tempered by consideration of how Corn behaved when those guns might have been employed to actually produce harm to someone. While Corn had two readily accessible guns under his seat,

he had the common sense and good judgment not to use them when the police pursued his travels and effected his arrest. Whatever reason that Corn possessed for having two loaded guns with him, it appears quite obvious that it was unrelated to a mindset on escaping apprehension and prosecution with the use of gunplay. He clearly had the opportunity to use the guns against the pursuing police officers, if that was his purpose in having the guns. Moreover, when arrested, he assumed a completely submissive posture, the absolute antithesis of a man who possesses weaponry with a mind bent on violence. The police immediately recovered the guns because Corn acknowledged having them and told the officers where they were. He cooperated completely with the arresting officers. His cooperation ensured that the officers were never placed in harm's way.

Finally, Corn garnered a separate charge and received a separate sentence of imprisonment for having the two guns along during the conspiracy.

Although the *potential* threat of harm from tanks that hold anhydrous ammonia or from loaded firearms can always be argued as an aggravating factor, the degree of aggravation assigned to potential outcomes that might have but did not actually materialize cannot justify a 66% increase of an already severe sentence of 15 years in prison. This is particularly so when the potential for harm from firearms use does not materialize because of sound choices that the possessor of those firearms made. We are not prepared to say that the potential for harm to FS workers and the potential for harm to the arresting police officers, under the facts of this case, are possibilities that support the imprisonment of this young man for 25 years.

Moreover, we do not believe that unrealized harm from conduct collateral to the conspiracy was the main sentencing concern, as the State maintains. Judge Vaughan was specifically concerned about the amount of methamphetamine that the successful fruition of this conspiracy would have produced, a large quantity that would have unleashed serious harm on the community at large. He explained that it was this potential harm that aggravated the offense and that warranted greater punishment. It was also the prosecutor's main concern in asking for twice the mandatory minimum of 15 years' imprisonment. There is no question that the potential widespread harm that could flow from the amount of the illegal drug that this conspiracy had planned to produce was an essential ingredient in deciding how much punishment to impose. Of course, Corn already faced greater punishment by the measure of penalties assigned because of the widespread harm large quantities of methamphetamine could produce. Any aggravation of the criminality necessitated something more than a factor implicit in the crime and the penalty range assigned to it.

We conclude that this sentence rests upon the use of a factor implicit in the crime and its penalty range. The magnitude of this conspiracy's goal was used to aggravate Corn's criminal conduct and thereby increase his punishment. Accordingly, we vacate his sentence and remand for a new sentencing hearing.

The other question raised on appeal deserves brief comment.

James Davis was the undisputed originator of this crime, a far more culpable conspirator. But for Davis, a habitual criminal, whose planning predated his solicitation of Corn to assist in the crime's commission, Corn would never have ventured into a serious criminal enterprise. Without Davis, and his role in this crime, no crime would ever have occurred.

Davis instigated the plot. He knew where the tanks were. He prepared maps that tracked a path to the tanks. He was the one who tampered with the tanks to fill the containers transported in his motor vehicle. And he was the one who knew the person to whom the anhydrous ammonia was destined to travel, the conspirator who would ultimately manufacture the methamphetamine.

Corn was a follower—a methamphetamine addict solicited to merely help the mastermind of this scheme accomplish its end.

Judge Vaughan found that a number of statutory mitigating factors accompanied Corn's criminality. He determined that Corn's criminality was mitigated by the fact that Davis had originated the criminal plot and had induced Corn to participate. He found as follows: "The defendant has no history of prior delinquency or criminal activity[ ] [and] has led a substantially law[-]abiding life for a substantial period of time before the commission of this offense. In fact, the presentence report indicates no prior record." Finally, Judge Vaughan found in mitigation that "[i]mprisonment of the [d]efendant would entail a hardship to his dependents, both his mother and his children."

There simply could not have been a more favorable set of mitigating circumstances to palliate William Corn's criminality. In contrast to the mitigation that accompanied Corn's situation, Davis had nothing to mitigate his leadership role in the conspiracy. As Judge Vaughan pointed out in sentencing Corn:

> "Mr. Davis *** had a prior record[—][i]n fact, a lengthy prior record, involving incarceration in North or South Carolina for ten years, burglary and other serious offenses. Mr. Corn has no such record."

Corn had previously led a law-abiding life. That path fell prey to the ills of methamphetamine use, and unsavory persuasion from the likes of James Davis. On the other hand, Davis lived a life of

unrepentant crime, with numerous felony convictions. Corn supported three young children and a mother, in a law-abiding way, before the use of methamphetamine and its introduction to the likes of James Davis. Davis plotted huge methamphetamine scores and recruited vulnerable addicts, otherwise law-abiding innocents, to participate in his conspiratorial designs. This case presents us with two very different kinds of criminal participants, with two very different roles in the conspiracy. We would expect to see widely divergent punishments. We think that a concern over the magnitude of the conspiracy's aim is probably to blame for the close similarity in punishments.

Notwithstanding, we do not vacate this sentence because of Corn's unfairness argument. We are presented with cases where disparate sentences of equally culpable defendants who possess comparable criminal histories are modified to ensure that similarly situated defendants are punished alike. See *People v. Gildon*, 239 Ill. App. 3d 984, 607 N.E.2d 290 (1993); *People v. Cook*, 112 Ill. App. 3d 621, 445 N.E.2d 824 (1983). Corn argues that if equally culpable defendants who have like backgrounds, ages, and criminal propensities should receive like punishments, defendants who are not equally culpable and who do not possess like criminal histories should receive disparate punishments.

We might well have treated Corn to lesser punishment than he received, because of how he lived his life prior to now and because of his lesser role in the conspiracy. We most certainly would have sentenced Davis with a far heavier hand than Corn, because of his long-standing criminal bent and his conspiratorial leadership role. Notwithstanding, we are not going to declare Corn's punishment unfair because it imprisons for a duration only five years less than Davis's prison term. The need for more disparity in the punishment of two criminal cohorts, as opposed to a need for more equality, always presents the possibility that the comparable sentences are the product of leniency to the more culpable, undeserving defendant, rather than undeserved harshness to the complaining defendant. While the same is true of similarly situated offenders who receive widely divergent punishments, the like punishment of like offenders is rooted in the concept of equal justice under the law, a constitutional right that all persons have and that all judges must respect. It has never been held that fundamental fairness and respect for the law require an appropriate degree of disparity in the punishments of defendants that are not similarly situated.

Because the law requires the equal treatment of similarly situated defendants in order to achieve fairness, the offender who receives the heavier punishment is entitled to a lesser sentence to achieve the goal

of equality. In some cases, fairness defined by equality trumps justice, because the greater sentence, rather than the lesser sentence, offers a more fitting punishment for both offenders.

Equal justice under the law is always an easily achievable aim. Ascertaining the appropriate degree of inequality necessary to achieve fairness would not be quite as simple. Whether fundamental fairness in sentencing two criminal cohorts with unlike criminal histories and differing degrees of culpability requires more disparity in punishment than those cohorts received is a question that awaits another day. We are confident that when only proper aggravating and mitigating factors are considered, Corn's sentence will be lowered to imprisonment for a duration that is significantly less than Davis's prison term. If our belief proves wrong, Mr. Corn can raise his fairness argument again and we will then provide an answer.

For the reasons stated, the defendant's sentence is vacated, and this cause is remanded for the imposition of a new sentence.

Affirmed in part and vacated in part; cause remanded.

HOPKINS and WELCH, JJ., concur.