NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230063-U

NO. 4-23-0063

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 24, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RANDALL S. GROSS, | ) | No. 20CF241 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed defendant's convictions of two counts of unlawful
delivery of methamphetamine, along with the concurrent 30-year sentences. The
record showed defendant knowingly and voluntarily waived his right to a jury trial.
The trial court did not consider an improper aggravating sentencing factor.

¶ 2     The trial court found defendant, Randall S. Gross, guilty of two counts of unlawful

delivery of methamphetamine (720 ILCS 646/55(a)(2)(C), (D) (West 2020)) and sentenced him to

concurrent 30-year sentences. Defendant appeals, arguing that the court erred by accepting his jury

trial waiver and then refusing to allow him to withdraw that waiver. Defendant also contends the

court improperly considered general societal harm as an aggravating sentencing factor. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State charged defendant in a two-count information. Count I alleged that on or

about February 24, 2020, defendant knowingly delivered to an undercover police agent more than

15 but less than 100 grams of a substance containing methamphetamine. Count II alleged that on or about February 29, 2020, defendant knowingly delivered to an undercover police agent more than 100 but less than 400 grams of a substance containing methamphetamine.

¶ 5        In October 2020, the trial court appointed the public defender to represent defendant. In February 2021, both the defense and the State indicated they would be ready for trial on the court's March 2021 calendar.

¶ 6              A. Defendant's Jury Trial Waiver and Requests for Continuances

¶ 7        When the matter was called for a jury trial on March 1, 2021, Chief Public Defender Scott Ripley informed the trial court that defendant said he recently retained private counsel. However, such counsel had not contacted Ripley, filed an appearance, or attended court. Ripley related defendant's request to continue the trial so that new counsel could appear. The court denied defendant's motion for a continuance and took a recess to allow Ripley to speak with defendant.

¶ 8        After the recess, the trial court asked Ripley whether he was ready to proceed with trial. Ripley again requested a continuance because (1) defendant "does not feel adequately prepared for the jury trial," (2) defendant claimed that his family had paid private counsel, and (3) after being informed that defendant retained new counsel, Ripley had not prepared for trial with defendant in the last week. However, in response to the court's questioning, Ripley indicated that he personally was ready for trial. The court again denied the motion for a continuance. Ripley requested another recess to speak with defendant, and the court granted that request.

¶ 9        Following this second recess, Ripley tendered to the trial court a written form waiving defendant's right to a jury trial and consenting to a bench trial. The court then had the following colloquy with defendant:

"THE COURT: Okay. So you want to waive your right to have a jury trial? You want to waive your right to have a jury trial today?

THE DEFENDANT: Yes.

THE COURT: You understand this means that instead of a jury of twelve determining by a unanimous verdict that the State has met its burden of proof at trial the Court alone would make that decision at the trial. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if you change your mind, for example, if you somehow get [new counsel] in here and decide that maybe a jury trial would have been better, you're not getting a jury trial. It is a permanent waiver. Any questions about that?

THE DEFENDANT: No."

The court asked defendant whether anyone had forced him to waive his right to a jury trial. Defendant responded that he felt "shafted" because he had not spoken to "this man" (presumably Ripley) since being in jail. The court explained to defendant why it would not continue the trial, ultimately opining that defendant was "trying to delay the case." The colloquy continued:

"THE COURT: The question is very simple. Has anyone forced you to waive your right to a jury trial?

THE DEFENDANT: No.

THE COURT: Has anyone promised you anything at all?

THE DEFENDANT: No.

THE COURT: All right. So knowing that this is a permanent waiver of your right to have a jury trial, do you still wish to waive that right?

THE DEFENDANT: Yes."

The court found that defendant made "a knowing and voluntary waiver of the right to a jury trial."

¶ 10     The trial court then asked Ripley whether he wanted to start the bench trial. Ripley responded, "[n]o." The court said it would set the matter for a status date on March 29, 2021. The court warned it was "not dragging this case out for another six months for [new counsel] to maybe get involved."

¶ 11     No new counsel filed an appearance for defendant as of March 29, 2021. That day, the trial court set the matter for a bench trial on May 13, 2021.

¶ 12     No new counsel filed an appearance for defendant as of May 13, 2021. That day, defendant, still represented by Ripley, filed a *pro se* "Motion for Substitution of Judge and Jury Trial Demand." In relevant portion, defendant "reassert[ed] his jury demand and consent[ed] to a thirty (30) day continuance so the clerk can summon jurors."

¶ 13     In court on May 13, 2021, the trial court struck defendant's *pro se* motion because he was still represented by Ripley. The court told defendant he could discuss with Ripley any matters he wished to bring to the court's attention before starting the bench trial. Defendant then said he fired Ripley the "last time we were here." Defendant explained he had recently hired new counsel—a different attorney from the person mentioned in court on March 1, 2021. However, through the court's questioning of defendant, it became apparent that defendant was not sure whether his mother had actually retained this new attorney for him. Defendant asked to continue the trial. The State objected. The court asked Ripley whether he had anything to add on defendant's behalf. Ripley said, "[n]o," and he informed the court that he had not spoken with the attorneys defendant attempted to hire. The court granted defendant's motion for a continuance, reasoning that it was "a little bit more difficult to retain counsel" while incarcerated. The court continued the matter to June 3, 2021, for status on the bench trial.

¶ 14        No new counsel filed an appearance for defendant as of June 3, 2021. That day, defendant told the trial court he was still trying to hire an attorney. The State objected to any further continuances. Ripley told the court he had no communication with the attorney defendant was attempting to retain. Ripley said he was ready to set a date for the bench trial. The court set the matter for a bench trial on July 19, 2021. The court told defendant to make sure that any counsel he might hire "gets in here as soon as possible."

¶ 15        On July 19, 2021, attorney Michael Malin filed an appearance for defendant. (Malin was not one of the attorneys defendant had previously told the trial court he was attempting to retain.) The record does not contain a report of proceedings for July 19. According to a docket entry, the court vacated the public defender's appointment, granted defendant's motion to continue the bench trial without objection from the State, and set the matter for a status conference on September 2, 2021.

¶ 16        Between September 2021 and June 2022, the trial court continued the bench trial multiple times on defendant's motions. During this time, defendant never requested to withdraw his jury trial waiver.

¶ 17                                B. Trial

¶ 18        The matter proceeded to a bench trial on June 30 and September 8, 2022. The State introduced evidence that defendant sold 27.787 grams of a substance containing methamphetamine to an undercover police officer on February 24, 2020. The State also introduced evidence that defendant sold 104.279 grams of a substance containing methamphetamine to an undercover police officer on February 29, 2020. The defense presented no evidence. The trial court found defendant guilty of both charges.

¶ 19                        C. The Presentence Investigation Report

¶ 20    The presentence investigation report (PSI) showed the following. Defendant was 39 years old, never married, and had one child with whom he reported having little contact. Defendant indicated he never had a relationship with his biological father, and he both witnessed and experienced domestic violence as a child. Defendant dropped out of high school and never obtained a GED. He worked various jobs before being incarcerated on the instant charges, and he currently served as a "trustee in the jail." Defendant had lived in various places, including Streator and Chicago. Defendant's mother, whom he described as his closest friend, recently died, as did his stepfather. Defendant denied having mental health problems and reported being in good health, apart from experiencing some pain from having once been hit by a car.

¶ 21    Defendant had a record of juvenile delinquency and a lengthy criminal history, which included multiple instances where his probation was revoked. Defendant went to prison for (1) theft in 2003, (2) possession of cannabis in 2004, (3) burglary in 2008, (4) theft in 2010, (5) possession of methamphetamine precursors in 2014, and (6) possession of a controlled substance in 2017.

¶ 22    According to the PSI, defendant said he began using methamphetamine at age 30, "with use monthly at the time of arrest." Defendant indicated "he does not feel he has a problem with alcohol or drugs, and does not feel treatment is necessary." However, defendant also told the interviewer that using methamphetamine "has caused him legal and social problems." Defendant reported participating in treatment as part of sentences in prior criminal cases, and he "expressed a willingness for treatment."

¶ 23                    D. Sentencing Hearing

¶ 24        At the sentencing hearing, the State presented no aggravating evidence. Defendant offered no mitigating evidence, apart from a letter from his cousin urging the trial court to show leniency and compassion for defendant.

¶ 25        The sentencing range on count I was 6 to 30 years in prison, to be served at 50%. The range on count II was 9 to 40 years, to be served at 75%.

¶ 26        The State recommended concurrent 30-year sentences. The prosecutor mentioned the seriousness of the offenses, defendant's criminal history, defendant's "worsening behavior" over time, defendant's lack of success with community-based sentences, and the need for deterrence. The prosecutor also noted that defendant sold drugs while purportedly being only an occasional drug user. See 720 ILCS 570/411(3) (West 2022) (specifying that one of the "most damaging" types of drug offenses, warranting "the most severe penalties," is when a dealer is a nonuser of controlled substances who delivers controlled substances to a user). Although the prosecutor recognized that the trial court could not impose a double sentencing enhancement, the prosecutor highlighted "the threat of harm to the community" that was implicated by defendant delivering methamphetamine "in rapid succession" in amounts "where it can affect multiple users."

¶ 27        The defense requested a 6-year prison sentence on count I and a 12-year sentence on count II. Defense counsel suggested that, notwithstanding defendant's statements in the PSI, there was "some extent of addiction involved" here. Counsel noted that defendant claimed to use methamphetamine monthly, which still was "pretty heavy usage considering the drug." According to counsel, there was "no evidence the drug was widely distributed" here, and the amount of methamphetamine at issue could be "still within the realm of a user quantity." Counsel mentioned that defendant's criminal history included only nonviolent offenses. Addressing the current

offenses, counsel asserted that "there's really no malintent that the Court can point to." Counsel also emphasized that defendant "lacked role models in his formative years" and "suffered abuse." Among the other points counsel made were that defendant had a supportive family and that he lost his mother and stepfather while incarcerated.

¶ 28 Defendant made a statement in allocution. He accepted accountability for his actions and discussed his difficult upbringing and lack of guidance. Defendant said he wanted to "[d]o my time and get out of the way."

¶ 29 The trial court began its ruling by explaining to defendant that the offenses were very serious, so this was "not a simple matter of *** doing your time and moving on." The court noted that the legislature provided "a pretty big" sentencing range, and the court had to determine where this case fell within that range.

¶ 30 The trial court noted the large quantity of methamphetamine at issue:

"I recognize that you spent time up in Chicago, and maybe in Chicago this is not a large quantity. But in Livingston County, Illinois, the amount of drugs, which I'm not double enhancing, I'm simply noting that for this community that is on the very, very high end of the amount of methamphetamine that we would ever see delivered within the community."

The court continued:

"So it's a situation where this is not kind of a low end as you are arguing in terms of the sentencing range. This is more on the high end of the sentencing range, mid to high end of the sentencing range, because of the seriousness of the offense, particularly in consideration of the section 411 factors [*sic*] that the State pointed out in their argument [(*i.e.*, a nonuser selling to a user)]."

In the court's view, it would be "bad" if defendant were a nonuser of controlled substances who delivered to users. The court noted, however, that if defense counsel were correct that defendant was indeed an addict who was selling drugs to support a habit, it was problematic that defendant did not recognize his addiction and his need to change. The court said that defendant downplaying his addiction, if he had one, "points to the very serious nature of the charges."

¶ 31        Also within the context of discussing the seriousness of the offenses, the trial court mentioned that methamphetamine is a "very highly toxic substance" that kills people. The court said that this "does create a big harm in society in general when you are talking about responding, emergency responders." According to the court, defendant was "contributing to the problem" by selling a "large amount of methamphetamine" that was "to be distributed amongst a number of people within the community." The court rejected defense counsel's suggestion that the amount of drugs defendant sold could have been consistent with somebody's personal use. Although people elsewhere might "stockpile" methamphetamine, in Livingston County, people "get it, they use it, [and] they buy it again."

¶ 32        The trial court then discussed the aggravating factors. The court determined that defendant's criminal history was "a very strong factor in aggravation." The court explained that defendant exhibited escalating behavior over time and chose a lifestyle of "checking in and out of" prison. The court recognized that defendant had a bad upbringing. However, the court believed there came a point when defendant could not use that as an excuse to get less prison time. The court observed that defendant had not taken advantage of past opportunities while on probation. Given defendant's record, the court was "not real optimistic that [defendant was] going to be able to make really much positive change in [his] life" at 39 years old.

¶ 33    The trial court further found that the need for deterrence was a "very, very strong" aggravating factor. The court explained: "And I know that addicts are not thinking about their jail time, but distributors on this scale should be[,] and maybe once we get this message out that you cannot deal this amount of drugs in this community[,] people will think twice about it."

¶ 34    The trial court said it understood defense counsel's argument about the nonviolent nature of defendant's crimes. Nevertheless, the court found that the instant offenses posed "a very serious threat of harm by way of overdosing." Thus, the court did not deem the nonviolent nature of the offenses to be "a very strong factor in mitigation."

¶ 35    The trial court noted that there were other statutory factors to consider, and the court "considered everything that I'm supposed to." In closing, the court said:

> "[B]ecause of the escalation in your behavior[,] *** you are a threat to society, to our children who you are providing this highly toxic substance to; and that's why I think based upon all of the information this is closer to the higher end of the range of sentencing."

The court sentenced defendant to concurrent 30-year sentences.

¶ 36    Defendant filed a *pro se* motion to reconsider the sentence. Defense counsel adopted that motion, and the trial court denied it. Defendant filed a timely notice of appeal.

¶ 37                    II. ANALYSIS

¶ 38                    A. Jury Trial Waiver

¶ 39    Defendant argues that the trial court erroneously accepted his jury trial waiver, as the court's admonishments were perfunctory. Defendant proposes that the admonishments here were distinguishable from those deemed acceptable in *People v. Tooles*, 177 Ill. 2d 462 (1997), and comparable to those deemed insufficient in *People v. Sebag*, 110 Ill. App. 3d 821 (1982).

Defendant also asserts that the record shows he "felt forced to waive his right to a jury trial due to defense counsel's lack of preparedness and the absence of a continuance to allow the appearance of privately hired counsel."

¶ 40 Defendant further argues that the trial court erred by refusing to allow him to withdraw his jury trial waiver when he filed a *pro se* motion reasserting his jury demand. Relying on *People v. Norris*, 62 Ill. App. 3d 228 (1978), and *People v. Smith*, 11 Ill. App. 3d 423 (1973), defendant claims that changed circumstances justified allowing him to withdraw the jury trial waiver. Specifically, defendant notes that when he waived his right to a jury trial on March 1, 2021, he told the court he felt "shafted" and expressed dissatisfaction about his communication with Ripley. According to defendant, the circumstances were different on May 13, 2021, because defendant told the court that day he had fired Ripley and retained new counsel.

¶ 41 Defendant recognizes he did not raise these issues below, and he thus forfeited them for appellate review. Defendant asks us to review his arguments pursuant to the second prong of the plain-error doctrine.

¶ 42 The State responds that the trial court properly determined defendant knowingly and understandingly waived his right to a jury trial. In addition to the in-court admonishments, the State notes that defendant executed a written jury trial waiver, had prior interactions with the criminal justice system, and was represented by counsel. The State also argues that the court properly struck defendant's *pro se* motion in which he reasserted his jury demand, as defendant was represented by counsel. Moreover, the State argues that defendant has failed to identify any significant change of circumstances that would have justified allowing him to withdraw his jury trial waiver.

¶ 43    A defendant has a constitutional right to a jury trial, and a waiver of that right must be "knowingly and understandingly made." *People v. Bracey*, 213 Ill. 2d 265, 269 (2004). Section 115-1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-1 (West 2020)) contemplates defendants executing written jury trial waivers, whereas section 103-6 of the Code (725 ILCS 5/103-6 (West 2020)) mentions waivers occurring in "open court." Caselaw establishes that "[t]here is no precise formula for determining whether a defendant knowingly and understandingly waived the right to a jury trial, and each case turns on its own facts and circumstances." *People v. Brown*, 2023 IL App (4th) 220399, ¶ 35. With that said, reviewing courts will deem a written jury trial waiver insufficient if the record shows there was absolutely no discussion of the matter in open court when the defendant was present. *People v. Scott*, 186 Ill. 2d 283, 285 (1999). By contrast, if the defendant does not execute a written jury trial waiver, the defendant still may validly waive the right to a jury trial through a colloquy on the record. *Tooles*, 177 Ill. 2d at 464.

¶ 44    Although defendant did not challenge the validity of his jury trial waiver below, our supreme court has said that " '[w]hether a defendant's fundamental right to a jury trial has been violated is a matter that may be considered under the plain error rule.' " *People v. Hutt*, 2023 IL 128170, ¶ 28 (quoting *Bracey*, 213 Ill. 2d at 270). The defendant bears the burden of persuasion to demonstrate both that a clear or obvious error occurred and that either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 20. The first step in the analysis is to determine whether a clear or obvious error occurred. *Moon*, 2022 IL 125959, ¶ 22.

¶ 45    On March 1, 2021, immediately after taking a recess to speak with defendant, Ripley tendered a written jury trial waiver to the trial court. The court then discussed this matter with defendant. The court confirmed with defendant that he wanted to waive his right to a jury trial. Defendant said he understood that "instead of a jury of twelve determining by a unanimous verdict that the State has met its burden of proof at trial[,] the Court alone would make that decision at the trial." The court informed defendant that the jury trial waiver would be permanent, and defendant said he had no questions about that. When the court asked defendant whether anyone forced him to waive his right to a jury trial, defendant initially told the court he felt like he was getting "shafted" because he and Ripley had not spoken since defendant was incarcerated. The court explained to defendant that he was "trying to delay the case" and that he had "ample opportunity to make these decisions." When the court asked defendant again whether anyone forced him to waive his right to a jury trial, defendant answered, "[n]o." Defendant also denied that anyone promised him anything. Defendant again indicated he wished to waive his right to a jury trial permanently. The court determined the waiver was knowingly and voluntarily made.

¶ 46    As an initial matter, to the extent defendant argues that his complaints about Ripley on March 1, 2021, cast doubt on the validity of the jury trial waiver, we reject that argument. The trial court determined defendant was merely "trying to delay the case," and we cannot say that such finding amounted to a clear or obvious error. Significantly, the defense had answered ready for trial on the previous court date, and defendant complained about Ripley only after the court denied defendant's request for a continuance on the day set for trial.

¶ 47    When defendants execute written jury trial waivers, reviewing courts have upheld such waivers where there was even less in-court discussion about the issue than occurred here. For

example, in *People v. Parker*, 2016 IL App (1st) 141597, ¶¶ 5, 53, the reviewing court upheld a jury trial waiver where the relevant in-court colloquy was as follows:

" 'THE COURT: *** Sir, I have here what is known as a Jury waiver. Is that your signature?

THE DEFENDANT: Yes, ma'am.

THE COURT: By signing that you give up the right to have a trial by Jury. Do you know what a Jury trial is?

THE DEFENDANT: Yes.' "

In *People v. Reed*, 2016 IL App (1st) 140498, ¶¶ 2, 11, the reviewing court upheld a jury trial waiver where the in-court discussion was as follows:

" '[THE COURT]: Mr. Reed, I have in my hand a document entitled jury waiver which means you want to waive your right to a jury and have the matter submitted to me for trial which is known as a bench trial. Is that your wish?

[DEFENDANT REED]: Yes.

[THE COURT]: On this document, it's got your name, today's date, the case number and charge and there is a signature on this. Is that your signature on that document, Mr. Reed?

[DEFENDANT REED]: Yes.

[THE COURT]: Has anyone forced or threatened you or promised you in any way to prevent you from having a jury trial?

[DEFENDANT REED]: No.

[THE COURT]: Are you making that decision freely and voluntarily?

[DEFENDANT REED]: Freely.' "

- 14 -

¶ 48    Nevertheless, defendant criticizes the trial court for failing to ascertain whether he (1) understood how a jury is selected, (2) understood the difference between a jury and a bench trial, (3) knew he could cross-examine witnesses and present a defense at a jury trial, (4) was not coerced, and (5) had a meaningful opportunity to consult with counsel. These arguments are unpersuasive. The court ensured defendant understood the difference between a jury trial and a bench trial; defendant said he understood that a bench trial would entail the court deciding the case alone, rather than a jury of 12 determining the case by unanimous verdict. It is also evident defendant's decision was not coerced, as he told the court nobody forced him to waive his right to a jury trial or promised him anything. Moreover, the record shows defendant had an opportunity to discuss the jury trial waiver with Ripley, as the court recessed twice before Ripley tendered to the court defendant's written jury trial waiver.

¶ 49    Defendant does not cite any authority indicating it is important to the validity of a jury trial waiver that a defendant understands how a jury is selected or that he or she may cross-examine witnesses and present evidence at a jury trial. To the contrary, the reviewing court in *People v. West*, 2017 IL App (1st) 143632, ¶¶ 9, 12, rejected the argument that these particular admonishments are necessary.

¶ 50    *Tooles* does not support defendant's challenge to his jury trial waiver. *Tooles* is distinguishable because it upheld oral jury trial waivers in consolidated appeals where none of the defendants executed written jury trial waivers. *Tooles* also said that "no set admonition or advice is required before an effective waiver of [the right to a jury trial] may be made." *Tooles*, 177 Ill. 2d at 469. Thus, reviewing courts have rejected defendants' attempts to challenge the validity of their written and oral jury trial waivers based on the absence of some of the admonishments mentioned in *Tooles*. *West*, 2017 IL App (1st) 143632, ¶ 14; *Parker*, 2016 IL App (1st) 141597,

¶ 50. With that said, the admonishments that our supreme court deemed sufficient in one of the consolidated cases in *Tooles* were less comprehensive than the admonishments here. See *Tooles*, 177 Ill. 2d at 471 (noting that the defendant indicated he understood that (1) he was giving up his constitutional right to a jury trial, (2) once he did that, the judge would hear the case without a jury, and (3) the defendant could not change his mind).

¶ 51          Defendant also relies on *Sebag*. The *pro se* defendant in *Sebag* executed a written jury trial waiver as to both charges he faced. *Sebag*, 110 Ill. App. 3d at 828. However, the in-court discussion about that waiver was brief and was directed only to one of the charges—a charge on which the defendant was later acquitted:

> " 'THE COURT: You are entitled to have your case tried before a jury or
>
> judge.
>
> DEFENDANT SEBAG: Judge.
>
> THE COURT: Jury waiver. Do you understand that by waiving a jury at
>
> this time that you cannot reinstate it; do you understand that?
>
> DEFENDANT SEBAG: Yes.' " *Sebag*, 110 Ill. App. 3d at 829.

The reviewing court held that the defendant did not validly waive his right to a jury trial on the charge that was never discussed in open court. *Sebag*, 110 Ill. App. 3d at 829. The court also mentioned that "[t]he defendant was without benefit of counsel, and it does not appear that he was advised of the meaning of a trial by jury nor does it appear that he was familiar with criminal proceedings." *Sebag*, 110 Ill. App. 3d at 829. *Sebag* is distinguishable because (1) defendant here was represented by counsel when he waived his right to a jury trial, (2) there was more in-court discussion about the waiver than in *Sebag*, (3) the discussion in open court here encompassed a waiver as to both charges, and (4) defendant had extensive experience with court proceedings by

virtue of his criminal record. See *West*, 2017 IL App (1st) 143632, ¶ 13 (explaining that the defendant's seven prior felony convictions created a "reasonable presumption that he knew what a jury trial was and understood his right to a jury trial but chose not to exercise that right").

¶ 52        " 'When a defendant waives the right to a jury trial, the pivotal knowledge that the defendant must understand—with its attendant consequences—is that the facts of the case will be determined by a judge and not a jury.' " *Brown*, 2023 IL App (4th) 220399, ¶ 45 (quoting *People v. Bannister*, 232 Ill. 2d 52, 69 (2008)). In light of defendant's written jury trial waiver, the discussion in open court about that waiver, and defendant's extensive experience with the criminal justice system, we cannot say that the trial court committed a clear or obvious error by accepting defendant's jury trial waiver. Accordingly, defendant has not demonstrated his entitlement to relief under the plain-error doctrine. See *Reed*, 2016 IL App (1st) 140498, ¶ 11 ("As we find no error occurred, there can be no plain error.").

¶ 53        Defendant's arguments relating to his May 13, 2021, *pro se* motion, which included a reassertion of his jury trial demand, do not change our analysis. Defendant was represented by counsel, so the trial court properly struck this motion. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 28 (explaining that "[a] trial court should not consider *pro se* motions filed by defendants who are represented by counsel," unless such motion is directed against counsel's performance). Defendant never attempted to reassert his jury demand through counsel, and defendant remained silent as his new attorney and the court repeatedly discussed that the matter would be set for a bench trial.

¶ 54        Defendant relies on two cases where events occurring after the defendants waived their rights to jury trials cast doubt on the voluntariness of the waivers. In *Norris*, the defendant waived his right to a jury trial under the presumption that there were no eyewitnesses to the charged

crime and that the State's evidence would be entirely circumstantial. *Norris*, 62 Ill. App. 3d at 231-32. During trial, the State presented testimony from newly identified eyewitnesses that was highly damaging to the defense, and the trial court denied the defendant's request for a mistrial. *Norris*, 62 Ill. App. 3d at 231-32. The appellate court reversed and remanded for a new trial, reasoning that "[u]nder the peculiar factual situation presented," the court "cannot say that [the] defendant's waiver of a jury trial was knowingly and intelligently made," as the defendant was "unaware of the most damaging evidence against him" when he waived that right. *Norris*, 62 Ill. App. 3d at 233.

¶ 55        In *Smith*, the defendant waived his right to a jury trial based on a perceived defect in the charging instrument. *Smith*, 11 Ill. App. 3d at 424. Over the defendant's objection, the trial court allowed the State to amend the charging instrument before trial, and the court then denied the defendant's request to withdraw the jury trial waiver. *Smith*, 11 Ill. App. 3d at 424. The appellate court reversed and remanded, reasoning that under these "peculiar circumstances," the defendant "may not have understandingly waived trial by jury to the charge as amended." *Smith*, 11 Ill. App. 3d at 425.

¶ 56        We note that this court has disagreed with *Smith*'s reasoning. See *People v. Spencer*, 160 Ill. App. 3d 509, 513 (1987) ("There is no logic to a rule that would permit a defendant to waive a jury, hoping to rely upon a nonexistent weakness in a charge and later retract the waiver."). Even so, *Norris* and *Smith* do not support defendant's position that he had a right to withdraw his jury trial waiver. The defendants in both *Norris* and *Smith* made proper requests through counsel to take specific actions in response to changed circumstances that were beyond the defendants' control. Here, by contrast, the only changed circumstance defendant identifies was internal to the defense—defendant's dissatisfaction with his communication with Ripley.

However, the trial court found that defendant's grievances against Ripley were merely an attempt to delay the trial. Additionally, defendant never filed a procedurally proper motion to withdraw the jury trial waiver. Thus, defendant has not shown that the court committed a clear or obvious error in connection with defendant's *pro se* motion reasserting his jury demand. Accordingly, the plain-error doctrine does not apply.

¶ 57                                     B. Sentencing

¶ 58        Defendant also argues that the trial court erroneously considered general societal harm as an aggravating factor in its sentencing decision, resulting in an impermissible double enhancement. Defendant contends that "resentencing is required because the court relied heavily on the improper factor." Defendant proposes that if we find this issue is not preserved for appeal, we should review the matter pursuant to both prongs of the plain-error doctrine. Alternatively, defendant asserts ineffective assistance of counsel for failing to object to the court's consideration of an improper factor.

¶ 59        The State responds, *inter alia*, that the trial court "did not rely on an improper factor but rather appropriately placed great weight on the numerous aggravating factors." The State also maintains that defendant fails to sustain an ineffective assistance claim.

¶ 60        Defendant did not raise this specific issue below, so the matter is unpreserved for review. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). Due to this forfeiture, defendant invokes the plain-error doctrine. "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred." *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to

deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. We note that defendant repeatedly mentions his " 'fundamental right to liberty' " in his brief. However, this court has explained that "[a] defendant's claim that the trial court's alleged error in imposing sentence impinged on his 'fundamental right to liberty' [is] not subject to plain-error review." *People v. McGath*, 2017 IL App (4th) 150608, ¶ 68. With that in mind, we will determine whether defendant has established that the trial court committed a clear or obvious error.

¶ 61        Our decision in *McGath*—which neither party cites—is instructive, as it addressed similar comments made by the same trial judge who presided over the instant case. The defendant in *McGath* was convicted of unlawful delivery of a controlled substance and was sentenced to 25 years in prison. *McGath*, 2017 IL App (4th) 150608, ¶ 1. As part of its sentencing decision, the trial court made the following remarks.

> " 'I think you recognize just the out of control epidemic in our community and across the State and I think across the country with heroin addiction; and we are just losing the battle big time. I think there's been four or five overdoses in this county in the last several months from drug addiction. People that I've set a bond on have bonded out and overdosed and died. That bothers me tremendously as a person in this community.
>
> And I'm saying that because I recognize that [defendant] and based upon the information in the [PSI] clearly has struggled forever with substance abuse addictions and not just heroin. Cocaine, alcohol. You know, your PSI is just a nightmare. It just, it's really heartbreaking. And you were dealt with what I would say is a really, really crappy hand.
>
> * * *

But dealing drugs threatens serious harm within our community, not just to the person that's doing the drugs who very well could overdose but to the responders when they are addressing people with overdoses. That it creates potential for accidents. They are responding to an overdose, and that takes them away from other crimes. So, I mean—or not crimes but other investigations or calls that they can be responding to. It has a ripple effect in the community when you deal drugs.' " *McGath*, 2017 IL App (4th) 150608, ¶ 19.

¶ 62 On appeal, one of the defendant's arguments was that the trial court improperly "considered societal harm caused by drugs and those who deal drugs in the community because the harm is already inherent in the offense." *McGath*, 2017 IL App (4th) 150608, ¶ 62. We recognized that "a factor implicit in the offense of which the defendant has been convicted cannot be used as an aggravating factor." *McGath*, 2017 IL App (4th) 150608, ¶ 63. However, we also observed " '[t]here is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court.' " *McGath*, 2017 IL App (4th) 150608, ¶ 64 (quoting *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22).

¶ 63 In rejecting the defendant's claim, we determined that "the trial court's comments, when placed in context, were clearly in response to defense counsel's argument that (1) defendant's conduct neither caused nor threatened serious physical harm and (2) defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another." *McGath*, 2017 IL App (4th) 150608, ¶ 71. We also explained that, notwithstanding the defendant's reliance on *People v. Atwood*, 193 Ill. App. 3d 580 (1990) (which defendant also relies upon, in part, here), more recent caselaw supported the proposition that "factors inherent in the

- 21 -

offense can sometimes be considered, along with other factors in aggravation and mitigation, as part of the nature and circumstances of the case." *McGath*, 2017 IL App (4th) 150608, ¶ 73. Accordingly, "a trial court may discuss the impact a drug offense has on the community without subjecting the defendant to double enhancement." *McGath*, 2017 IL App (4th) 150608, ¶ 73. Ultimately, we agreed with the Second District's view:

> " 'It is not improper *per se* for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking. It is important that defendants understand why they are subject to the penalties provided by law and why they have received their particular sentences. The harm that the crime causes society is an inherent consideration which underlies the basic range of penalties specified by the legislature. Commenting on the problems caused by drug-related crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse. We do not wish to discourage courts from addressing such relevant considerations, but we suggest that sentencing courts attempt to segregate such general commentary from the balancing of sentencing factors.' " *McGath*, 2017 IL App (4th) 150608, ¶ 73 (quoting *People v. McCain*, 248 Ill. App. 3d 844, 852 (1993)).

¶ 64 Here, as in *McGath*, the comments defendant claims were erroneous were prompted by defense counsel's sentencing arguments. Defense counsel characterized defendant as a drug addict, despite defendant's statements to the contrary. Counsel also noted that defendant's criminal history included nonviolent offenses and that there was "no malintent" associated with the current offenses. Counsel downplayed both the seriousness of the offenses and the large quantities of methamphetamine defendant sold. Specifically, counsel asserted, "There was no evidence the drug

was widely distributed. So in someone's clouded mind that has committed an offense such as this, it may very well be with any drug that it's a quantity still within the realm of a user quantity."

¶ 65        The trial court addressed these arguments in its sentencing decision. Specifically, the court mentioned general societal harm (1) to emphasize the seriousness of the offenses and (2) in finding that the nonviolent nature of the offenses was not "a very strong factor in mitigation." The court also discussed multiple proper aggravating factors that justified imposing much lengthier prison sentences than the defense requested. Notably, the court did *not* say it considered as an aggravating factor that defendant's conduct caused or threatened serious harm. That distinguishes the matter from some of the cases defendant cites where reviewing courts reversed and remanded for resentencing based on improper consideration of the harm inherent in drug offenses. See *People v. Glenn*, 363 Ill. App. 3d 170, 181 (2006) (noting that "the trial court made an express finding that the harm threatened to others was an aggravating factor"); *People v. Corn*, 358 Ill. App. 3d 825, 827 (2005) (recounting that the trial court found that the amount of methamphetamine that could be produced from the anhydrous ammonia the defendant stole, and the resultant harm to the community, "was a serious threat that aggravated the defendant's criminal conduct"); *People v. Maxwell*, 167 Ill. App. 3d 849, 850 (1988) (relating that the trial court found as an aggravating factor that the defendant's conduct caused or threatened serious harm). However, even where a court in a drug case expressly considers as an aggravating factor that a defendant's conduct caused or threatened serious harm, there is Fourth District precedent supporting the proposition that this may not be reversible error if the finding was made in response to the defendant's sentencing arguments. See *People v. Solis*, 2019 IL App (4th) 170084, ¶¶ 10, 28, 33.

¶ 66        Defendant notes that after the trial court stated the amount of methamphetamine he sold was at the "very, very high end" seen in the community, the court said, "So it's a situation

where this is not kind of a low end as you are arguing in terms of the sentencing range." However, in the next sentence, the court said that mid-to-high-end sentences were warranted "because of the seriousness of the offense, particularly in consideration of the Section 411 factors [*sic*] that the State pointed out in their argument." In context, we do not interpret the court's comments as suggesting the court was enhancing defendant's sentences based on something inherent in the offenses. To the extent there was any ambiguity on this point, the court clarified it was "not double enhancing" when it discussed the large amounts of drugs at issue. This increases our confidence that the court considered only appropriate sentencing factors.

¶ 67    The totality of the sentencing ruling shows the trial court properly considered all relevant circumstances and the parties' arguments. We cannot say the court committed a clear or obvious error. Accordingly, defendant has not demonstrated his entitlement to relief under the plain-error doctrine.

¶ 68    For similar reasons, defendant has not shown his counsel was ineffective for failing to raise this issue below. See *People v. Todd*, 2019 IL App (3d) 170153, ¶ 15 (rejecting an ineffective assistance claim in the context of a postconviction petition where the record showed the sentencing court appropriately considered the amount of drugs the defendant sold). The trial court's comments here were not objectionable, so defense counsel's failure to object was within "the wide range of professionally competent assistance." See *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

¶ 69                                    III. CONCLUSION

¶ 70    For the reasons stated, we affirm the trial court's judgment.

¶ 71    Affirmed.